## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1999-KA-00752-SCT

*PAMELA RYALS a/k/a PAMELA SUE RYALS a/k/a 'PAM'*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/26/1999 |
| TRIAL JUDGE: | HON. R.I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL V. RATLIFF |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:   DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | RICHARD LAWRENCE DOUGLASS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED- 06/14/2001 |
| MOTION FOR REHEARING FILED: | 6/25/2001; denied 8/16/2001 |
| MANDATE ISSUED: | 8/23/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. This case comes to this Court on appeal of Pamela Ryals ("Ryals") from the Circuit Court of Lamar County. In June of 1998, Ryals was indicted in the Circuit Court of Lamar County for the murder of Wendell Ryals ("Wendell"), alleged to have occurred on or about January 30, 1998. Ryals was convicted of manslaughter and sentenced to a term of twenty (20) years imprisonment. Ryals timely appealed to this Court. Finding that Ryals's arguments lack merit, we affirm the judgment of the circuit court.

### FACTS

¶2. Pamela Ryals and Wendell Ryals were divorced on February 11, 1997. Following their divorce, the couple's relationship severely deteriorated due in large part to Wendell's attempts to take his children from Ryals and his objections to Ryals's dating Bobby Gates, a black man.

¶3. Despite a permanent restraining order Ryals had against Wendell, he continued to harass her on several occasions. On the night of January 30, 1998, Ryals and Gates returned home, and after coming back outside to get Gates who was listening to the car radio, Ryals heard something land on the sidewalk. Ryals assumed that the person throwing things at her was Wendell. She then got her loaded gun out of the dresser and went back outside to look for Wendell, who was in the street in front of Ryals's apartment between her car and Gate's car, approximately ten feet from her.

¶4. Ryals asked Wendell to leave, but he would not. He dodged and hid between other apartment

complexes, behind wooden fences, and amongst the trees. Ryals followed Wendell in hopes of finding the location of his car so that she could report the location to the police. Ryals and Wendell repeated the above scenario, where Wendell would hide from Ryals, surprise her, and disappear again. Ryals and Wendell finally met behind some apartment buildings and engaged in a physical confrontation that ended in Ryals shooting Wendell three times.

¶5. On the night in question, Deputy Sheriff James Perry ("Perry") of the Lamar County Sheriff's Department, responded to a "shot-fired" call. In response to Perry's questioning, Ryals told Perry that she shot Wendell. Ryals then took Perry to some apartments not far from her own, where Perry discovered a body lying on the ground. He checked the body for a pulse but could not get one. He then went back to his patrol car and radioed for an ambulance and for investigators.

¶6. Aggrieved by the judgment of the trial court, Ryals raises the following issues on appeal:

**I. WHETHER THE STATE OF MISSISSIPPI SYSTEMATICALLY EXCLUDED FEMALES FROM THE JURY IN VIOLATION OF PAMELA RYALS' RIGHT TO HAVE A JURY OF HER PEERS?**

**II. WHETHER THE LOWER COURT ERRED IN FAILING TO SUPPRESS RYALS' STATEMENTS TO LAW ENFORCEMENT OFFICIALS?**

**III. WHETHER THE LOWER COURT ERRED IN FAILING TO DECLARE A MISTRIAL DUE TO THE INTRODUCTION OF A WITNESS'S INFLAMMATORY STATEMENTS?**

**IV. WHETHER THE STATE FAILED TO PROVE ITS CASE BEYOND A REASONABLE DOUBT?**

**V. WHETHER RYALS' SENTENCE WAS EXTREME IN LIGHT OF HER HAVING NO PREVIOUS CRIMINAL RECORD?**

## DISCUSSION

### I.

¶7. Ryals asserts that the peremptory strikes used by the State during the voir dire process were based solely on gender, and therefore, they violated the United States Supreme Court decision, *see **J.E.B. v. Alabama ex rel T.B.***, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). She further asserts the trial court erred by allowing the State to systematically exclude females from the jury when the venire group was almost evenly divided among men and women and where the State was not required to give gender-neutral reasons for its peremptory strikes.

¶8. We find that Ryals did not make a prima facie case of gender-based discrimination in the State's use of peremptory strikes against women. There is simply no indication that the State's use of peremptory challenges against female venire persons created an inference of purposeful discrimination.

¶9. This Court has stated on numerous occasions that a trial court's determinations under ***Batson v. Kentucky,*** 476 U.S. 79, 93-94, 106 S. Ct. 1712, 90 L.Ed.2d 69 (1986), are afforded great deference

because they are largely based on credibility. *See, e.g.*, *Puckett v. State*, 788 So. 2d 752, 756 (Miss. 2001); *McGilberry v. State*, 741 So.2d 894, 923 (Miss. 1999); *Coleman v. State*, 697 So.2d 777, 785 (Miss. 1997). This Court will not reverse factual findings relating to a *Batson* challenge unless they are clearly erroneous. *Puckett*, 788 So. 2d at 756.

¶10. The *Batson* doctrine is not concerned with racial, gender, or ethnic *balance* on petit juries, and it does not hold that a party is *entitled* to a jury composed of or including members of cognizable group. Rather, it is concerned exclusively with *discriminatory intent* on the part of the lawyer against whose use of his peremptory strikes the objection is interposed. *See Powers v. Ohio*, 499 U.S. 400, 406, 411, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991); *Batson*, 476 U.S. at 93-94, 106 S. Ct. 1712, 90 L. Ed 2d 69. This Court has specifically held, "[p]roportional representation of [members of cognizable groups] on a jury is not required." *Harris v. State*, 576 So.2d 1262, 1264 (Miss. 1991). We have further stated that defendants are not entitled to a jury of any particular composition. *Id.* Under the *Batson* doctrine, the objecting party has the right to be tried by a jury selected on a non-discriminatory criteria, but the petit jury actually chosen need not mirror the community. *Britt v. State*, 520 So.2d 1377, 1379 (Miss. 1988).

¶11. In *J.E.B.*, the United States Supreme Court extended the standard for determining a prima facie case of discrimination in peremptory strikes based on race from *Batson v. Kentucky* to apply to peremptory challenges based on gender. *Id.* at 129. *See Batson*, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87 (citations omitted); *see also Duplantis v. State*, 644 So. 2d 1235, 1246 (Miss. 1994). *J.E.B.* held that "gender, like race, is an unconstitutional proxy for juror competence and impartiality." *J.E.B.*, 511 U.S. at 128. The three considerations in determining whether the defendant has made a prima facie case of gender-based discrimination are whether 1) he/she is a member of a cognizable gender group 2) the prosecution has exercised peremptory challenges to remove members of his/her gender and 3) the facts and any other relevant circumstances raise an inference that the prosecution excluded potential jurors on the basis of their gender. *Id.* at 144-45 (citing *Batson*, 476 U.S. at 97).

¶12. A party alleging gender-based discrimination must make a prima facie showing of intentional discrimination before the party exercising the strike is required to provide an explanation for the basis of the peremptory strike. The explanation need not rise to the level of a "for cause" strike, however, it must be based on a juror characteristic other than gender. *Id*. Once the defendant has made his prima facie case, the burden shifts to the State to give a neutral explanation for the peremptory challenge. *Batson*, 476 U.S. at 97. The prosecution may not rebut the defendant's prima facie case by stating this his peremptory strike was based on the assumption that the juror would have been partial to the defendant because of his race or by denying that he had a discriminatory motive or by "affirming his good faith in making individual selections."*Id.* at 97, 98 (citing *Alexander v. Louisiana*, 405 U.S. 625, 632, 92 S. Ct. 1221, 31L.Ed. 2d 536 (1972)).

¶13. As this Court discussed in *Puckett*, 788 So. 2d at 756-57, and in *Bush v. State*, 585 So.2d 1262 (Miss. 1991), the above test was modified by the Supreme Court's decision in *Powers v. Ohio*, 499 U.S. 400 (1991). In *Powers* the Court held that a defendant may object to racially-based exercised of peremptory challenges whether or not the excluded jurors and the defendant are of the same race. *Id.* at 416. This Court has stated on several occasions that the *Powers* holding, in essence, eliminated the first two factors required by *Batson*. *Puckett,* 788 So. 2d at 757; *Thorson v. State*, 653 So.2d 876, 898 (Miss. 1994) (Smith, J., dissenting); *Bush v. State*, 585 So.2d at 1267-68. The pivotal question is "whether the opponent of the strike has met the burden of showing that proponent has engaged in a pattern of strikes

based on race or gender, or in other words 'totality of the relevant facts gives rise to an inference of discriminatory purpose.' " *Puckett,* 788 So. 2d at 757; *Randall v. State*, 716 So.2d 584, 587 (Miss. 1998) (quoting *Batson*, 476 U.S. at 94).

¶14. In order to decide that it is necessary to remand for a "*Batson* hearing," it must first be determined that the circumstances of the State's use of peremptory challenges against minority venire persons created an inference of purposeful discrimination. *See Thorson*, 653 So.2d at 898 (Smith, J., dissenting). The record reveals that the State exercised 10 of its 12 peremptory strikes against women, and the defendant used four of its six peremptory strikes against men. The jury was composed of nine men and three women.

¶15. The "totality of the relevant facts" do not give an inference of discriminatory purpose. The trial judge was shown a single factor, that the State exercised 10 of its 12 peremptory strikes against women, to support an inference of discriminatory intent. This factor, in itself, under the facts of this case, was not compelling proof of discriminatory intent, given that women composed one-half, rather than a minority, of the venire, and given that the State tendered three women. Opposed to this one factor were the factors that nothing about the voir dire, nothing about the prosecutors' conduct, nothing about the habitual policies of these prosecutors or any stated policies of the district attorney's office, and nothing about the nature of the case support an inference of discriminatory intent.

¶16. Indeed, from a review of the record, it is clear that the State had valid reasons to reject several of the jurors. Kathryn Levesque indicated that she had already formed an opinion about the case to the extent that she could not be completely objective, nor could she be a fair and impartial juror. Celeste Buhl stated that she had been a witness in a previous divorce court matter. Jean Haspeslagh stated that she taught at the University of Southern Mississippi with Janie Buts, a nurse called to be a witness. Also, Ann Daley indicated that she would be biased because she went to church with one of the witnesses. It is imperative that the State be required to offer a gender-neutral explanation for its peremptory challenges only when a prima facie case is made that the State exercised its challenges to exclude venire persons on the basis of their gender. No prima facie case of purposeful discrimination was raised in this case. Ryals only raises the fact that the State exercised 10 of its 12 peremptory challenges. This is simply not enough. Ryals did not fully articulate and explain the third *Batson* prong, the crucial element needed for a prima facie case, as it applied to the case at bar. As stated above, the U.S. Supreme Court has not held that a defendant is entitled to a jury of any particular composition; rather, the Court holds that a defendant has the right to be tried by a jury selected on non-discriminatory criteria. The trial judge was correct in deciding that there had been "no systematic exclusion by gender." Both male and female venire persons were stricken. It is clear from the record that the circumstances in this case did not raise an inference that the prosecution excluded potential jurors on the basis of their gender. Therefore, since Ryals did not make a prima facie case, the State was not required to give any gender neutral explanations for its peremptory strikes.

## II.

¶17. Ryals asserts that she was not given her *Miranda* warnings prior to making statements about Wendell to Officer Perry. She contends that the lower court erred in failing to suppress Ryals' statements to law enforcement officials. We have held that *Miranda* warnings are not required when the interrogation is part of a "general on-the-scene investigation." *Tolbert v. State*, 511 So. 2d 1368, 1375 (Miss. 1987) (collecting authorities). Because Officer Perry merely asked, "what happened?" and Ryals responded, "I shot him," we find that Perry's questions were part of his general on-the-scene investigation and that

*Miranda* warnings were not required. This issue is therefore without merit.

### III.

¶18. Ryals asserts that the trial court erred by admitting the statements made by her witness, Reyna Bounds, on cross-examination, which confirmed that Reyna knew of a "relationship" between Ryals and Reyna's husband. This issue is without merit because the State's questions on cross-examination were proper for impeachment purposes. We have held in *Davis v. State*, 568 So. 2d 277, 279 (Miss. 1990), that, "ordinarily, when we have reversed cases because of inflammatory testimony, we have noted a pattern of prosecutorial misconduct as well as clear prejudice to the defendant."

¶19. The State did not pursue this line of questioning during the remainder of its cross-examination of Reyna, and these statements were not mentioned in the State's closing arguments. This issue is therefore without merit.

### IV.

¶20. Ryals contends that the State failed to prove its case beyond a reasonable doubt. This Court maintains that the State produced sufficient evidence that Ryals's version of what happened was materially contradicted by the physical evidence, and the jury was properly instructed as to the issue of self-defense.

¶21. We must consider all the evidence in the light most favorable to the State when the State is the non-moving party. The State is given the benefit of all favorable inferences that may be drawn from all the evidence. *May v. State*, 460 So. 2d 778, 781 (Miss. 1984) (citing *Glass v. State*, 278 So. 2d 384, 386 (Miss. 1973)). Expert opinion as to the nature and cause of death was provided by the State, and this testimony was not significantly rebutted by the defense. This issue is therefore without merit.

### V.

¶22. Ryals argues that her sentence was extreme in light of her having no previous criminal record. We hold that Ryals's sentence was not extreme because it was within the statutory limit established by Miss. Code Ann. § 97-3-25 (2000), the statutory penalty for manslaughter. The statutory limit is not more than twenty years, and the sentence ordered by the trial judge was for twenty years.

¶23. In *Griffin v. State*, 195 So. 472 (Miss. 1940), this Court held that a sentence for manslaughter for twenty years was not reversible when the trial court decided the sentence, the issue was properly submitted to the jury, and the sentence was within that allowed by the statute. We find no error in the trial court's sentence in the case at bar. This issue is therefore without merit.

### CONCLUSION

¶24. For the above reasons, this Court affirms the judgment of the trial court. Ryals did not come close to establishing the third *Batson* prong needed to determine whether a defendant has made a prima facie case of gender discrimination. This Court finds no indication that the State's use of peremptory challenges against female venire persons created an inference of purposeful discrimination. Therefore, we hold that the Ryals did not make a prima facie case of gender discrimination under *Batson.* Also, the remaining issues lack merit. Therefore, the judgment of the Lamar County Circuit Court is affirmed.

¶25. **CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**MILLS, COBB, DIAZ AND EASLEY, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J., BANKS, P.J., AND WALLER, J.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶26. I disagree with the majority's finding that Ryals did not establish a prima facie case of gender discrimination. Ryals objected twice to the State's use of its peremptory strikes, and the trial court did not require the State to produce gender-neutral reasons for its strikes, pursuant to ***J.E.B. v. Alabama ex rel. T.B.***, 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994) and ***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L.Ed. 2d 69 (1986). I would remand this case to the trial court for a proper ***J.E.B.*** hearing, pursuant to ***Batson***. Accordingly, I dissent.

¶27. We have a history of remanding cases for a ***Batson*** hearing when the State was not required to or failed to provide race-neutral reasons for its peremptory strikes in the face of such a challenge. *See* ***Thorson v. State***, 653 So. 2d 876, 896 (Miss. 1995).

¶28. In ***Walker v. State***, 740 So. 2d 873, 880 (Miss. 1999), the State used seven of its nine peremptory strikes to exclude African Americans from the jury when the population of the county was 50% African American. We held that the State could not counter the inference of racial discrimination in the use of its peremptory strikes with its argument that it did seat two African Americans on the jury. In ***Walker***, we found an inference of racial discrimination and remanded the case to the circuit court <u>because the court failed to conduct a ***Batson*** hearing</u>. We also reiterated our holding in ***Conerly v. State***, 544 So. 2d 1370, 1372 (Miss. 1989), where we held that the mere acceptance of other African Americans as jurors is no defense to a ***Batson*** claim. ***Walker***, 740 So. 2d at 880. Thus, it follows that in the instant matter, the mere acceptance of three women on the jury does not, ipso facto, obviate a claim of unlawful discrimination based on gender.

¶29. In addition, in ***Kolberg v. State***, 704 So. 2d 1307, 1312-13 (Miss. 1997), we stated, "This Court can not review whether a trial judge abused his discretion when race-neutral reasons were never presented to the trial judge and he never exercised his discretion in considering the ***Batson*** challenge." ***Id.*** at 1313. We further held that it is , "imperative that the State be required to offer a racially-neutral explanation for its peremptory challenges. Because none was given, we hold this was error, and that a ***Batson*** hearing <u>must be conducted</u>." ***Id.*** at 1314 (emphasis added) (citing ***Thorson***, 653 So. 2d at 895-96 (citations omitted). Because of the holding in ***J.E.B.***, this standard is also be applied when inquiring into gender-neutral standards.

¶30. The majority cites the dissenting opinion of ***Thorson*** for its assertion that an inference of purposeful discrimination must be found before a case may be remanded for a ***Batson*** hearing. However, the majority overlooks the facts of ***Thorson***, which are comparable to the present facts.

¶31. In ***Thorson***, there were 13 African American venire members, and the State used seven of its peremptory strikes to eliminate them from the jury. The trial court denied the defense counsel's motion to require the State to give racially-neutral reasons for these strikes. Ultimately, four African Americans sat on

the jury, while two were alternate jurors.

¶32. The facts of this case are far more striking than the facts of *Thorson*, in that the State used 10 of its 12 peremptory strikes against women, and only three women sat on the jury. The court chose the jury from a group of 16 men and 16 women, and 10 of these 16 women were stricken by the State's peremptory strikes. As in *Walker*, 740 So. 2d at 880, it is not enough that the State placed some women on the jury. On the contrary, the jury must be composed of jurors selected free of gender or racial discrimination. The State was also not required to give any gender-neutral reasons for these strikes, and it should have been required to do so, as Ryals had established her prima facie case of an inference of gender discrimination.

¶33. Despite *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), which eliminated the first two prongs of the *Batson* test, Ryals still met the third prong of this test and established a significant inference of discrimination. From the record, there appears to be an inference of gender discrimination by the State. Ryals objected to the State's use of peremptory strikes, and the trial court advised her counsel to wait and stated, "let's just see when they tender you the panel, you may make any proper motions you choose to make." After the State had accepted 12 potential jurors, Ryals again made her objection at which point the trial judge repeated the list of jurors the State had accepted and rejected. Based on the list the trial judge recited, he decided that there had been "no systematic exclusion by gender."

¶34. The trial judge cannot simply dismiss an objection based upon gender discrimination simply because Ryals's counsel did not cite the proper case law in his objections, such as *Batson* or *J.E.B.* Clearly, Ryals's counsel was concerned with the State's use of peremptory strikes to exclude women from the jury. It is clear from the record that Ryals' defense counsel was objecting to the State's use of its peremptory strikes, and the trial court should have responded accordingly by requiring the State to give gender-neutral reasons for its strikes. Since none were given, this case should be remanded to the trial court for a proper *J.E.B.* hearing, per *Batson*. *See Walker,* 740 So. 2d at 880 & 890; *Kolberg*, 704 So. 2d at 1312-14; *Thorson*, 653 So. 2d at 896. It was not enough that the trial court concluded that the State had excluded some men and some women, without an inquiry into the specific numbers of strikes used against women. Because peremptory strikes, by their nature, may enhance the likelihood for discrimination, it is essential for the trial court to follow the holdings of *Batson* and *J.E.B.* in order to constitutionally protect this type of jury selection from becoming rife with discrimination.

¶35. The majority also attempts to charge that some of the stricken venire members appeared to be biased in this matter. Although Kathryn Levesque stated that she had learned something about the case, she clearly corrected herself later during the voir dire process, stating that she had been wrong, that she did not know anything about the case, and that she could be fair and impartial to both sides.

¶36. Neither Celeste Buhl, Jean Haspelagh, nor Ann Daley stated that any of their prior experiences would effect their ability to objectively weigh the facts and remain impartial as jurors. In fact, Daley stated that she went to church with one of the witnesses in the case, and another venire member, Thomas Ward, also stated that he went to church with one of the witnesses. Daley was stricken without further explanation, and Thomas was selected by the State as a juror. Therefore, referring to Daley to support the State's use of peremptory strikes actually provides support to Ryals's argument that the State engaged in gender discrimination.

¶37. The majority misses the point when it argues that Ryals is not insured a jury composed of or including members of a cognizable gender group. That assertion is not what Ryals raises on appeal. Rather, Ryals

asserts that she should have been granted a proper jury selection, free from racial and gender discrimination. This is proper pursuant to the cases cited above. Ryals did establish her prima facie case for gender discrimination when she objected twice to 10 of the 16 women, the group from which the jury was selected, being stricken from jury service by the State's use of 10 of its 12 peremptory strikes against these women. At that point, the trial court had the responsibility to order the State to give gender-neutral reasons for the strikes, and it erred when it did not do so.

¶38. Based upon our case law, the majority clearly errs by not remanding this case for a *J.E.B.* hearing, pursuant to *Batson*. For these above reasons, I dissent.

**PITTMAN, C.J., BANKS, P.J., AND WALLER, J., JOIN THIS OPINION.**