# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CT-00798-SCT

*JAMES WESLEY SCOTT*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/06/2001 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES WESLEY SCOTT (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | JON MARK WEATHERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. CONVICTION OF ROBBERY AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED - 05/15/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     On April 5, 2000, the Forrest County Grand Jury indicted James Wesley Scott for simple robbery, attempted kidnaping, and attempted sexual assault. On August 29, 2001, a jury pool was called. After voir dire, but before empanelment, Scott alleged that the state's use of peremptory challenges was racially motivated in violation of ***Batson v. Kentucky***, 476 U.S. 79; 106 S. Ct. 1712, 90 L. Ed. 2d 79 (1986). The trial judge responded with a brief

discussion of the jurors who were dismissed for cause and then asked: "Now those having been excused, do you wish to be heard on *Batson*?" Defense counsel responded, "No sir." The circuit court discussed *Batson* and the facts of this case, and concluded that Scott failed to establish a *prima facie* case of discrimination, and therefore a *Batson* hearing was unnecessary. The jury was empaneled, including three African-Americans. The alternate juror also was African-American.

¶2. On August 31, 2001, the jury found Scott guilty of simple robbery but not guilty of attempted kidnaping. The jury was not able to reach a verdict on the third count, attempted sexual battery. On September 13, 2001, Scott filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial, which was overruled on December 6, 2001.

¶3. Aggrieved, Scott raised the following issues on appeal:

    **I.**     **WHETHER THE CIRCUIT COURT ERRED IN DENYING SCOTT'S MOTION FOR JNOV AND/OR A NEW TRIAL AND IN REFUSING TO GIVE HIS PEREMPTORY INSTRUCTIONS.**

    **II.**     **WHETHER THE CIRCUIT COURT PROPERLY OVERRULED SCOTT'S *BATSON* OBJECTION WITHOUT REQUIRING THE PROSECUTION TO PROVIDE RACE-NEUTRAL REASONS FOR USING PEREMPTORY CHALLENGES AGAINST AFRICAN-AMERICAN JURORS.**

¶4. The state filed its brief. Scott then filed a reply brief, pro se, and claimed that he received ineffective assistance of counsel at both the trial and appellate levels, that he was denied a "fair and speedy trial," and that his conviction was improper since it was based primarily on the victim's eyewitness testimony.

¶5. The Court of Appeals remanded the matter for a *Batson* hearing. The trial judge, Richard W. McKenzie, had retired. Circuit Judge Robert Helfrich recused himself, and this

Court appointed Special Judge R. I. Prichard, III, to conduct the *Baston* hearing. In accordance with the order, Judge Prichard conducted a special hearing and agreed with the original trial court judge, finding that Scott had failed to demonstrate a *prima facie* case of discrimination by the prosecution's use of peremptory challenges. Accordingly, Judge Prichard held that it was unnecessary for the prosecution to have to assert a racially neutral basis for its use of peremptory challenges. The case was then returned to the Court of Appeals, which reversed the conviction of the Forrest County Circuit Court and remanded the case for a new trial, based on the Court of Appeals' findings that Scott did in fact demonstrate a *prima facie* case of discrimination and that the prosecution should have been required to offer reasoning for its use of the peremptory challenges.

¶6.　The State of Mississippi sought certiorari review, which was granted on January 10, 2008. The state asserts that the Court of Appeals erred by failing to grant proper deference to the lower court's decision on the *Batson* issue. We agree with the state and thus reverse the Court of Appeals decision and reinstate the judgment of the trial court.

## STANDARD OF REVIEW

¶7.　"On appellate review, a trial court's determinations under *Batson* are accorded great deference because they are largely based on credibility." *Berry v. State*, 802 So. 2d 1033, 1037 (Miss. 2001) (citing *McGilberry v. State*, 741 So. 2d 894, 923 (Miss. 1999)). The appellate court will reverse only when such decisions are clearly erroneous. *Berry*, 802 So. 2d 1033, 1037 (citing *Woodward v. State*, 726 So. 2d 524, 530 (Miss. 1998); *Lockett v. State*, 517 So. 2d 1346, 1349-50 (Miss. 1987)).

## ANALYSIS

3

¶8.  There must be "a *prima facie* showing of discrimination before the party exercising the strike is required to provide an explanation for the basis of the peremptory strike." ***Ryals v. State***, 794 So. 2d 161, 165 (Miss. 2001).

### I.  *Batson*

> **A.  *Whether Scott's general Batson objection preserved a Batson challenge for appeal.***

¶9.  "Failure to make a contemporaneous objection waives an issue for purposes of appeal." ***Spicer v. State***, 921 So. 2d 292, 309 (Miss. 2006).

¶10.  The discussion quoted below reveals that the ***Batson*** challenge occurred during a bench conference held after the drawing of the jury was complete and after Scott had verbally assented to the jury.[1]

> THE COURT: . . . Mr. Scott, I want to make absolutely certain.  I know there has been some possible personality clash between you and your lawyer, but I want to make absolutely certain on this record that you had the opportunity to confer with your lawyer as far as the drawing of this Jury and that you have participated in that?
>
> THE DEFENDANT (James Scott): Yes, sir.
>
> THE COURT: And are you satisfied with that?
>
> THE DEFENDANT (James Scott): Excuse me?
>
> THE COURT: Are you satisfied with the Jury?

---

[1] The record reflects a pause in proceedings followed by the bench conference quoted below.  It is unclear, but it is assumed that Mr. Price's objection fell within this period of time, during the pause in the proceedings but before the judge requested the sidebar be on the record.  Apparently, the judge recognized that this discussion needed to be on the record despite the parties' failure to request it.

THE DEFENDANT (James Scott): Yes, sir.

THE COURT: All right, so noted. Let's get the Jury in – or is there anything before we get the Jury in?

(PAUSE IN PROCEEDINGS, FOLLOWED BY THE FOLLOWING CONFERENCE AT THE BENCH, OUTSIDE THE HEARING OF THE JURY PANEL.)

THE COURT: Note for the record that at this point in time Mr. Price has indicated that he wishes to raise the *Batson* challenge to certain members of the jury panel. We will hear from you.

MR. PRICE [Counsel for the Defense]: Your Honor, at this time we would challenge the State's use of peremptory challenges, under *Batson v. Kentucky*. It appears that the State has exercised every peremptory challenge in order to exclude certain members of the Jury. The defendant is of the African-American Race and is entitled to his Constitutional rights.

We would ask that the State be required to show the race neutral reasons for the challenges of all the African-American jurors.

THE COURT: Note for the record the Court observed the following members of the African-American Race; 2, Calvin Boykins, 10, 12, 13, 14, 15, 24, 25, 27, 31, 33, 34, 36, 38, 40 and 41, Hill. That is as far as we got.

The following individual members are African-American members of the venire panel: 43, 47, 48, 51, 54, 58, 62, 63, 65, even though we did not get to those. I should note that of that number, number 62, who was the fourth from the last, was excused because she was emotional.

As far as the others being excused for cause are as follows: Would be number 14, Burket; 15, Terrell; Lee, 22: and 27, Crosby. Now, those having been excused do you wish to be heard on *Batson*?

MR. PRICE: No, sir.

¶11.    In *Thomas v. State* this Court adopted the Fifth Circuit's rationale for requiring a

timely *Batson* objection when it quoted:

Now it is too late for appellants to insist on an explanation they did not request at trial. The "timely objection" rule is designed to prevent defendants from

5

> "sandbagging" the prosecution by waiting until the trial has concluded unsatisfactorily before insisting on an explanation for jury strikes that by then the prosecutor may have largely forgotten.

*Thomas v. State*, 517 So. 2d 1285, 1287 (Miss. 1987) (quoting *United States v. Forbes*, 816 F. 2d 1006, 1011 (5th Cir. 1987)). This rationale is applicable to *Scott*. Scott stated he did not wish to be heard on *Batson* and asserted no further facts in support of the objection. Because of Scott's failure to follow through with specific facts to establish a *prima facie* case of discriminatory use of peremptory strikes, the trial court concluded that Scott had not established a *prima facie* case. Since a *prima facie* case was not established, the state was not required to offer a non-discriminatory basis for its use of peremptory strikes. Then, when the Court of Appeals remanded for a *Batson* hearing, the original defense attorney and prosecutor were unavailable and the special judge was left with a review of the record. Because Scott did not raise a *prima facie Batson* objection, the trial court did not require that the state offer non-discriminatory reasons for its peremptory strikes, resulting in an incomplete record. To allow Scott's *Batson* objection now effectively would allow the "sandbagging" that the *Thomas* and *Forbes* courts sought to prevent.

¶12. In *Branch v. State,* the Court noted that, "Branch has made no prima facie case that the strikes were based upon an impermissible reason, such as race or gender. Even though [counsel] generally raised the issue [of *Batson*] she made no specific challenge." *Branch v. State*, 882 So. 2d 36, 59 (Miss. 2004). Scott merely raising a *Batson* objection was not sufficient to establish a *prima facie* case.

¶13. The record reflects that, after raising a *Batson* objection, counsel for the defendant withdrew the objection. A similar situation occurred in *Wilson v. State*, when the state

6

withdrew its *Batson* objection after defense counsel countered with a *Batson* objection of his own. *Wilson v. State*, 775 So. 2d 735, 739 (Miss. App. 2000). Even though Scott did not specifically use the term "withdraw" or "waive," he responded "no" when asked by the trial judge if he wished to be heard on *Batson*. This Court finds that this statement by defense counsel constituted a waiver.

¶14. The trial court, however, in spite of this exchange, continued to analyze the *Batson* issues. The trial court overruled the *Batson* challenge by finding that Scott had not established a *prima facie* case. Therefore, the state was not required to give a valid, racially neutral basis for its peremptory strikes.

¶15. In the present case, Scott's counsel initially raised a general *Batson* objection, and requested that the state be required to show racially neutral bases for all of its peremptory strikes against African-Americans. However, once the judge informed counsel of the venire persons who were struck for cause, defense counsel then stated he did not wish to be heard on *Batson*. Counsel waived his request for a *Batson* hearing, and declined to assert any facts to support his objection. By declining to assert any specific facts, defense counsel made an unsupported objection, and in doing so, he failed to properly raise a *Batson* objection.

**B. Whether the circuit court properly overruled Scott's Batson objection.**

¶16. Notwithstanding the procedural bar discussed herein, Scott asserts no facts that indicate that the *Batson* objection has merit.

¶17. In *Ryals v. State*, the prosecution used ten of its twelve peremptory strikes to exclude female venire persons, but the Court held that factor alone was not enough to support an inference of discriminatory intent. *Ryals v. State*, 794 So. 2d 161, 166 (Miss. 2001).

7

Recently, this Court found "that exercising seven peremptory strikes against African-Americans, standing alone, absent any other facts or circumstances . . . fails to establish a prima facie showing that race was the criteria for the exercise of the peremptory challenge." *Strickland v. State*, 2008 Miss. LEXIS 132, *19-20 (Miss. March 6, 2008).

¶18.    In the case *sub judice*, the state used nine peremptory strikes against African-American venire persons. During trial, at the special *Batson* hearing, and in the appellate brief, the use of nine peremptory strikes against African-American venire persons was the sole basis Scott's counsel offered in support of establishing a *prima facie* case under *Batson*. Still, under *Strickland* and *Ryals*, that factor alone is not enough to support an inference of discriminatory intent. When weighed with the totality of the evidence, the trial judge was not clearly erroneous in overruling the *Batson* objection.

¶19.    This Court also examines other factors mentioned in *Ryals*. First, the Court in *Ryals* noted that the state tendered three female venire persons. *Ryals*, 794 So. 2d at 166. In the instant case, the empaneled jury included three African-Americans. The alternate juror was also African-American. Next, the *Ryals* Court noted that there was only one factor in favor of discriminatory intent but there were several factors against the inference of discriminatory intent, specifically, "nothing about the prosecutor's conduct, nothing about the habitual policies of the district attorney's office, and nothing about the nature of the case support an inference of discriminatory intent." *Ryals*, 794 So. 2d at 166. Here, we find an identical situation. The sole factor hinting at discriminatory intent, and the only factor pointed to by Scott or his counsel below, is that the prosecution used nine of its eleven peremptory strikes to exclude African-American venire persons. As in both *Strickland* and *Ryals*, nothing about

8

the prosecutor's conduct, the habitual policies of the district attorney's office, or the nature of the case supports an inference of discriminatory intent.

¶20. It is important to note that in **Ryals**, women constituted fifty percent of the jury pool, which differs from the instant case, where African-Americans constituted approximately thirty-seven percent of the jury pool (twenty-five of the sixty-six, according to the record). However, in terms of numbers, the ten peremptory strikes were more devastating in **Ryals** because there were only sixteen women in the jury pool. **Ryals**, 794 So. 2d at 169. In the instant matter, there were twenty-five African-Americans in the jury pool. Striking ten of sixteen venire persons is facially much more prejudicial than striking nine of twenty-five.

¶21. These facts are all factors which were within the observation of the trial judge. The above-listed reasons are findings of fact. This Court does not sit as a finder of fact and must review findings of fact with great deference. **Robinson v. State**, 761 So. 2d 209 at 211 (Miss. 2000). "This deferential standard of review reflects 'confidence that trial judges experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.'" **Strickland**, at *17-18 (quoting **Batson**, 476 U.S. at 97). When the totality of the evidence is weighed, the trial judge was not clearly erroneous in overruling the **Batson** objection.

¶22. Because neither Scott nor his trial counsel provided enough facts, either during the trial or on appeal, to support a *prima facie* **Batson** objection, the trial court was correct in overruling the objection.

## II. Ineffective assistance of counsel.

9

¶23. Scott first mentioned the issue of ineffective assistance of counsel in his pro se reply brief. In *Sanders v. State*, this Court adopted the Fifth Circuit's rule that "we will not consider issues raised for the first time in an appellant's reply brief." *Sanders v. State*, 678 So. 2d 663, 669 (Miss. 1996). Because Scott raised the issue of ineffective assistance of counsel for the first time in his pro se reply brief, we normally would apply the procedural bar. But because it is also raised in the state's brief, we address the merits of the issue.

¶24. In order to succeed on a claim of ineffective assistance of counsel, the defendant has the burden of showing two things: (1) that the counsel's performance was deficient, and (2) that it was sufficient to constitute prejudice to the defense. *Branch v. State*, 882 So. 2d 36, 51-2 (Miss. 2004); *Walker v. State*, 703 So. 2d 266, 268 (Miss. 1997). Trial counsel is presumed competent, and the burden of proving ineffective assistance of counsel rests with the defendant. *Branch*, 882 So. 2d at 52.

¶25. We first must determine if Scott met his burden of proving that counsel's performance was deficient. In *Branch*, this Court considered a defendant who claimed ineffective assistance of counsel due to failure to make a *Batson* objection during the guilt phase of a trial. *Branch*, 882 So. 2d at 58. The *Branch* Court concluded, "Failure to raise a meritless objection is not ineffective lawyering." *Branch*, 882 So. 36 at 60. According to *Branch*, in order to succeed on a claim of ineffective assistance of counsel based on a *Batson* objection, the objection must be valid. *Branch*, 882 So. 2d 36 at 58. As we discussed in section II above, Scott provided insufficient, if any, evidence that the *Batson* objection was valid. Since Scott has not met the burden of the first prong, there is no reason to reach the second prong of the test for ineffective assistance of counsel.

### III. Whether the circuit court erred in refusing to give his peremptory instructions.

¶26. Scott was indicted on three charges, robbery, attempted kidnaping, and attempted sexual battery. During trial, Scott proposed three peremptory instructions, one for armed robbery, one for sexual battery, and one for attempted kidnaping. All three were refused. The jury found Scott guilty of robbery, not guilty of attempted kidnaping, and was unable to reach a verdict on the charge of attempted sexual battery. As Scott did not offer a peremptory instruction for the crime of simple robbery, this issue is without merit.

### IV. Whether the circuit court erred in denying Scott's motion for JNOV.

¶27. After trial, Scott moved for JNOV or, in the alternative, for a new trial. The trial court denied the motion. A motion for JNOV challenges the legal sufficiency of the evidence. *Hicks v. State*, 973 So. 2d 211, 214 (Miss. 2007). "Reversal can only occur when the evidence of one or more of the elements of the charged offense is such that reasonable and fair-minded jurors could only find the accused not guilty." *Randolph v. State*, 852 So. 2d 547, 555 (Miss. 2002).

¶28. The prosecution was required to prove beyond a reasonable doubt each element of robbery. Mississippi Code Annotated Section 97-3-73 (Rev. 2006) provides that the crime of robbery is committed by a "person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person . . . ." The indictment alleged that the property was taken from the victim by putting her "in fear of immediate injury to her person . . . ."

11

¶29. At trial, the victim testified that James Wesley Scott followed her to her apartment. She said that he got out of his car and grabbed her and said, "This is a robbery, give me all your money." The victim testified that Scott threatened to shoot her, cut her or hit her over the head with a beer bottle if she tried to get away. The victim said she was terrified and tried to get away, but that she tripped and he grabbed her again, tearing her clothes. The victim testified that she dropped her wallet and keys and that a passing car stopped and chased the defendant away. The victim testified that inside her wallet was her checkbook and also a voided Domino's check. The victim identified Scott as her assailant. Officer Shane Tucker testified that the victim's checkbook and the voided Domino's check were recovered from Scott's vehicle pursuant to a search warrant.

¶30. Consequently, there is evidence in the record which is sufficient to support the jury verdict that Scott was guilty of robbery. It is clear that a reasonable, fair-minded juror could find beyond a reasonable doubt that Scott was guilty of robbery. Therefore, this assignment of error has no merit.

**V.      Whether the circuit court erred in denying Scott's motion for a new trial.**

¶31. Scott's post-trial motion sought JNOV or, in the alternative, a new trial. Scott argues that a new trial is warranted because the state improperly amended his indictment. This argument was first advanced during trial when Scott moved to dismiss the indictment, then again in an objection during deliberations over jury instructions, and finally in his motion for JNOV or, in the alternative, for a new trial. The crux of Scott's argument is that the original indictment stated that the personal property taken from the victim was "a wallet." Through counsel, Scott argued, "Proof here has not shown the taking and carrying away of a wallet.

12

It has only shown at best that a checkbook and a check were found in Mr. Scott's car." The state responded that there was sufficient evidence to sustain a conviction on each of the counts charged. The trial court denied Scott's motion to dismiss the indictment.

¶32. During deliberations over jury instructions, the state sought to introduce an instruction that stated that the personal property taken from the victim was a "wallet and checkbook." The defendant argued that such an instruction did not track the language of the indictment. The state responded that a wallet includes in its contents a checkbook. The state then moved to amend the indictment to conform to the proof. The trial court granted the motion and amended the indictment to say "wallet and checkbook." After trial, Scott filed his motion for JNOV or, in the alternative, for a new trial, and the trial court denied it.

¶33. "Allowing an amendment to the indictment after the close of evidence does not, standing alone, constitute reversible error. An indictment may be amended without action of the grand jury if the amendment is one of form and not of substance." *Goodin v. State*, 2008 Miss. LEXIS 143, *4 (Miss. Mar. 20, 2008) (citing *Spann v. State*, 771 So. 2d 883, 898 (Miss. 2000)). Amendments are permissible if they do not prejudice the defendant by materially altering the essential facts of the offense or a defense under the original indictment. *Lee v. State*, 944 So. 2d 35, 40 (Miss. 2006).

¶34. In *Greenlee v. State*, this Court held that amending a murder indictment from "malice aforethought" to "deliberate design" is one of form, not substance. *Greenlee v. State*, 725 So. 2d 816, 822 (Miss. 1998). In the present case, the original indictment included the word "wallet," and the amendment thereto merely added "and checkbook." The amendment was one of form and not of substance. It did not alter the essential facts of the offense charged,

13

nor did it alter an available defense.  Therefore, Scott was not prejudiced by the addition, and this issue has no merit.

CONCLUSION

¶35.   Scott did not meet his burden of proof on his claim of ineffective assistance of counsel.  Even if Scott did not waive the ***Batson*** challenge, he failed to establish a *prima facie* showing of discrimination. Therefore, even in the absence of waiver, the trial court correctly dismissed Scott's ***Batson*** challenge.  Furthermore, the trial court did not err in rejecting the peremptory instructions offered by Scott nor in denying Scott's motion for JNOV or, in the alternative, for a new trial.

¶36.   **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. CONVICTION OF ROBBERY AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, P.J., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.  DIAZ, P.J., CONCURS IN RESULT ONLY.  GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**