ON WRIT OF CERTIORARI

RANDOLPH, Justice,
for the Court.
¶ 1. The facts in the case sub judice were aptly summarized by the Mississippi Court of Appeals, see Booker v. State, 5 So.3d 411, 416, 2008 WL 224070 at *1, 2008 Miss.App. LEXIS 77 at ⅜3-4 (Miss.Ct.App. January 29, 2008), and do not bear repeating. In short, Anthony Terrell Booker was arrested for the murder of Dorian Johnson and subsequently was indicted for capital murder. On May 17, 2004, Booker was convicted by a jury in the Circuit Court of Jackson County and sentenced to life imprisonment without the possibility of parole. Booker’s appeal therefrom was assigned to the Court of Appeals, which affirmed both the conviction and sentence. See id. at 424, 2008 WL 224070 at *10, 2008 Miss.App. LEXIS 77 at *27. Booker’s “Petition for Writ of Certiorari,” raising only the issue of improper peremptory strikes by the prosecution pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),[1] was then granted by this Court.
ISSUE
¶ 2. This Court will consider:
(1) Whether the circuit court and Court of Appeals erred in finding the prosecution’s peremptory strike of juror Chauncey Thompson to be permissible under Batson.
ANALYSIS
¶ 3. On Batson determinations, this Court has established that:
[a] reversal will only occur if the factual findings of the trial judge appear to be “clearly erroneous or against the overwhelming weight of the evidence.” *358 Tanner [v. State], 764 So.2d 385, 393 (Miss.2000)_ “On appellate review, the trial court’s determinations under Batson ... are accorded great deference because they are based, in a large part, on credibility.” Coleman v. State, 697 So.2d 777, 785 (Miss.1997).... The term “great deference” has been defined in the Batson context as meaning an insulation from appellate reversal any trial findings which are not clearly erroneous. Lockett v. State, 517 So.2d [1346,] 1349 (Miss.1987).
Smith v. State, 835 So.2d 927, 940 (Miss. 2002). Our standard conforms to that recently enunciated by the United States Supreme Court. “On appeal, a trial court’s ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous[2].” Snyder v. Louisiana, — U.S.-,-, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175, 185, 2008 U.S. LEXIS 2708 at *21 (2008). See also Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (quoting Wainwright v. Witt, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)) (“[djeference to trial court findings on the issue of discriminatory intent makes particular sense in this context because ... evaluation of the prosecutor’s state of mind based on demeanor and credibility lies ‘peculiarly within a trial judge’s province.’ ”). In Hernandez, the United States Supreme Court added that “in the absence of exceptional circumstances, we would defer to [the trial court].” Hernandez, 500 U.S. at 366, 111 S.Ct. 1859.
¶ 4. This Court previously has stated that:
[t]he Batson doctrine is not concerned with racial, gender, or ethnic balance on petit juries, and it does not hold that a party is entitled to a jury composed of or including members of [a] cognizable group. Rather, it is concerned exclusively with discriminatory [3] intent [4] on the part of the lawyer against whose use of his peremptory strikes the objection is interposed.
Strickland v. State, 980 So.2d 908, 915 (Miss.2008) (quoting Ryals v. State, 794 So.2d 161, 164 (Miss.2001)) (emphasis added). See also Snyder, 128 S.Ct. at 1208 (quoting United States v. Vasquez-Lopez, 22 F.3d 900, 902 (9th Cir.1994)) (“the Constitution forbids striking even a single prospective juror for a discriminatory purpose.”). To satisfy Batson, “[t]he trial court must ... determine whether the objecting party has met their burden to prove there has been purposeful [5] discrimination [6] in the exercise of peremp *359 tory challenges.” Carter v. State, 799 So.2d 40, 46 (Miss.2001) (quoting Stewart v. State, 662 So.2d 652, 557-58 (Miss.1995)) (emphasis added). See also Flowers v. State, 947 So.2d 910, 917 (Miss.2007) (citing Berry v. State, 802 So.2d 1083, 1042 (Miss.2001)) (“[t]he burden remains on the opponent of the strike to show that the race-neutral explanation given is merely a pretext [7] for racial discrimination”) (emphasis added). Therefore, under Bat-son, the pretextual reason proffered by the prosecutor must be intended to disguise purposeful racial discrimination. See Strickland, 980 So.2d at 915; Flowers, 947 So.2d at 917; Carter, 799 So.2d at 46. Stated otherwise, the race-neutral reason proffered by the prosecutor must be a false cover for an intentional, racially discriminatory purpose.
¶ 5. In considering Booker’s Batson challenges at trial, the record clearly establishes the learned circuit judge’s appreciation of the legal principles involved. Specifically:
the procedure to follow on a Batson challenge is for the Court to indicate whether there seems to be a pattern and whether the movant has established a prima facie case for relief under Batson. ... [Tjhere were five African-American jurors on that particular panel, and ... of those five, four were struck by the State of Mississippi. I think that is sufficient to require the State to state for the record and for the Court’s consideration race-neutral reasons for the strikes.
Thereafter, Assistant District Attorney Timothy Jones responded, with respect to Thompson, that:
[t]he State’s race-neutral reason ... is that, in checking the names of our jurors, we found that he has had a marijuana conviction, a driver’s license violation, an insurance violation, a seat belt violation in Pascagoula. He was convicted on 2/5/08. And on those bases, especially the marijuana conviction, Judge, we didn’t want a convicted marijuana holder on the jury.
Circuit Judge Dale Harkey then concluded, “I find the existence of that prior criminal history is sufficiently race-neutral to justify a ... peremptory strike.”
¶ 6. Post-conviction, Booker filed a motion for a new trial, asserting that “[t]he trial court erred in failing to sustain [Booker’s] Batson challenges on five (5) Afro-American potential jurors who were peremptorily excused by the State.” In support of his motion, an affidavit of City Court Clerk Rhonda Diehl was presented to the trial judge. That affidavit provides:
[t]hat on the morning of May 17, 2004, Investigator Scott Mclrath, of the District Attorney’s Office, Pascagoula, Mississippi called your Affiant and made inquiry as to any criminal record that the potential juror, Chauncey D. Thompson, may have had with said Police Department; that your Affiant ran the name given to her by the Investigator and advised that the potential juror had been charged with four (4) misdemeanor crimes, they being Simple Possession of Marijuana, No Driver’s License, No Liability Insurance and a Seat Belt Violation; that your Affiant further advised said Investigator that all of these charges had been dismissed by the City for the reason that said potential juror *360 was not the person who committed said four alleged misdemeanor crimes. 'Attached hereto is a print-out that was used by said Affiant when she furnished said Investigator with the information.
In response, District Attorney Tony Lawrence replied:
Your Honor, Mr. Mclrath, the investigator in my office, has been in law enforcement for twenty-something years, looks at every venire list that this office gets, and he goes in there and sees if there’s names he recognizes. He’s been in the business forever. This was one of them. He called up there ... [.] And the affidavit confirms that the information was given to him that this man had been charged with four offenses.
Now, whether those offenses had been dismissed, we didn’t have at that time. He got the first information. So, [defense counsel George Shaddock] is providing this other information. The information the State got from Mr. Mclrath’s calling the police department was read into the record, so Your Honor will be able to clearly see exactly what the State knew at that time. But it confirms that this man was charged with a crime. Four crimes.
The circuit court, uniquely in a position to observe the demeanor and assess the credibility of the district attorney’s reply, found “no evident untruths or dishonesty at all involved on the part of the State of Mississippi.”[8] (Emphasis added). Speaking to defense counsel, the trial judge added “your subsequent investigation as evidenced by these affidavits that you’ve submitted as exhibits don’t indicate to me any basis for believing ... that these were lies told by the State of Mississippi.”
¶ 7. This ruling is entitled to “great deference[,]” see Smith, 835 So.2d at 940, and ought not be reversed “simply because we would have decided the case differently.” Easley, 532 U.S. at 242, 121 S.Ct. 1452. Rather, this Court must have a “definite and firm conviction that a mistake has been committed.” Id. (quoting United States Gypsum Co., 333 U.S. at 395, 68 S.Ct. 525). See also Snyder, 128 S.Ct. at 1207-08 (given the trial court’s “pivotal role in evaluating Batson claims[,]” the “trial court’s ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous.”). How can that requisite “definite and firm conviction” be reached, given clear evidence to the contrary? To do so requires a presumption of pretext by the prosecutors, when the evidence reflects, at best, no more than a mistaken belief. For Batson purposes, the investigator’s motive (real or presumed) is irrelevant, absent proof of knowledge by the lawyer exercising the peremptory strikes. See Strickland, 980 So.2d at 915 (quoting Ryals, 794 So.2d at 164) (Batson “is concerned exclusively with discriminatory intent on the part of the lawyer against whose use of his peremptory strikes the objection is interposed.”) (Emphasis added). Nonetheless, in his dissent, Justice Graves accuses District Attorney Lawrence and/or Assistant District Attorney Jones of making “blatant” and “deliberate” [9] misrepresentations[10] (Graves, J., *361 Dissenting Opinion at paragraph 18) to Circuit Judge Harkey, an obligatory prerequisite under the facts of this specific case, to reach this conclusion. This omniscient finding is diametrically opposed to the eyewitness impressions recorded by the trial judge in the record, in fulfilling his pivotal role in evaluating Batson claims. Not a single witness or document gives this reviewing Court knowledge of what was conveyed to the prosecutors or special insight into either prosecutor’s state of mind, demeanor, or credibility. It is clear that the ever-present arbiter of justice, the trial judge, did not see, sense, hear, or discern these “lies.” There is no evidentiary basis in the record that the prosecutors knowingly or purposefully offered false information to the trial court to disguise their real motivation. It is more plausible that the State’s race-neutral reason was based upon an honest, albeit mistaken, belief. That determination is best left in the capable hands of the trial judge. See Snyder, 128 S.Ct. at 1208 (citations omitted) (determination of the demeanor of the attorney exercising the challenge is “particularly within a trial judge’s province[.]”); Hernandez, 500 U.S. at 365, 111 S.Ct. 1859.
¶ 8. Moreover, no evidence is present in this record that would justify a “definite and firm conviction” of purposeful racial discrimination. As the Court of Appeals commented in dicta, “it is quite apparent that, if district attorney Lawrence had accurate information at the time of his peremptory strike of Thompson, such factually accurate information was clearly still sufficient to establish a non-pretextual race-neutral reason for the strike.” Booker, 5 So.3d at 420-21, 2008 WL 224070 at *13, 2008 Miss.App. LEXIS 77 at *16. Specifically, District' Attorney Lawrence stated at the hearing on the motion for new trial that:
[Thompson] was charged and dismissed, because it wasn’t the right guy. That’s the biggest race-neutral reason I’ve ever seen when I’m putting someone on a jury. Someone who’s been charged by the police and dismissed because it was the wrong guy, I don’t want him thinking on the jury this may be the wrong guy, too.
However, the proper test is measuring what was known when the Batson decision was first made, during the jury-selection process, and for purposes of this opinion, the post-trial reasoning is disregarded.
¶ 9. In sum, this Court is not a divine overseer of all things Batson, and assuming such sovereignty would offend the great deference the law requires to be extended to trial courts. In the case sub judice, the learned trial judge found “no evident untruths or dishonesty at all involved on the part of the State of Mississippi.” This finding, the byproduct of the eyewitness impressions recorded by the trial judge in fulfilling his pivotal role in evaluating Batson claims, is entitled to “great deference.” Smith, 835 So.2d at 940. In other cases, perhaps a cold appellate record could reveal facts from which an appellate court could safely declare error. But such is not the case here. The record reveals not a single “blatant” and/or “deliberate” misrepresentation (Graves, J., Dissenting Opinion at paragraph 18), and the trial judge, acting within his province, see Snyder, 128 S.Ct. at 1208, found the proffered reason was credible, implicitly determining that the prosecutors’ demean- or did not reveal a discriminatory intent. We can be assured of this observation, for the record reveals a clear understanding by both District Attorney Lawrence and Circuit Judge Harkey of them duties and responsibilities vis-a-vis their oaths of office and the edicts of this Court regarding Batson. To accept the conclusions of Justice Graves’s dissent, one must surmise *362 that District Attorney Lawrence and Assistant District Attorney Jones are not only liars, but that they also acted in an intentional, premeditated, and racially discriminatory manner. Furthermore, one would also have to surmise that Circuit Judge Harkey either lacks the legal acumen to recognize a prohibited exercise of challenges occurring before his own eyes and ears; or, worse yet, was complicit in allowing the prohibited exercise. I decline to accept either based on a concoction of suspicion, guesswork, and speculation (with a dash of conjecture) all derived from an affidavit asserting what an investigator knew, but revealing nothing as to what the prosecuting attorneys knew. Such a conclusion requires stacking inference upon inference, thus miserably failing to satisfy the requisite legal standard that there must be a “definite and firm conviction that a mistake has been committed.” Easley, 532 U.S. at 242, 121 S.Ct. 1452 (quoting United States Gypsum Co., 333 U.S. at 395, 68 S.Ct. 525).
CONCLUSION
¶ 10. Based upon the aforementioned analysis, this Court affirms the Court of Appeals’ affirmance of Booker’s conviction and sentence in the Circuit Court of Jackson County.
¶11. THE JUDGMENTS OF THE COURT OF APPEALS AND THE CIRCUIT COURT OF JACKSON COUNTY ARE AFFIRMED. CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT WITHOUT THE POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
SMITH, C.J., EASLEY, CARLSON AND LAMAR, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J. AND IN PART BY WALLER, P.J. AND DICKINSON, J. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER AND DIAZ, P.JJ. AND IN PART BY GRAVES, J.

. The precise question presented by Booker was "[d]id the trial court and the Court of Appeals err in failing to rule that the district attorney violated Batson by using false information and giving pretextual justifications to support the strikes of minority jurors Chauncey Thompson and Alden Stallworth.” Under Mississippi Rule of Appellate Procedure 17(h), ”[l]he Supreme Court may limit the question on review.” Miss. R.App. P. 17(h). Finding Booker's argument regarding juror Alden Stallworth without merit as discussed by the Court of Appeals, see Booker, 5 So.3d at 421, 2008 WL 224070 at *13, 2008 Miss.App. LEXIS 77 at *16-17, no further discussion is warranted. We limit our analysis to the prosecution’s peremptory strike of juror Chauncey Thompson. See paragraph 2 infra.

. As the United States Supreme Court has stated, under the "clearly erroneous” standard, it "will not reverse a lower court's finding of fact simply because we would have decided the case differently.” Easley v. Cromartie, 532 U.S. 234, 242, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001) (internal quotation marks omitted). Instead, the reviewing court must ask "whether, ‘on the entire evidence,' it is ‘left with the definite and firm conviction that [a] mistake has been committed.' ” Id. (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)) (emphasis added).

. "Discriminatory" is defined as "[d]isplaying or marked by prejudice: biased.” Webster's II New College Dictionary 325 (3d ed.2001).

. "Intent" is defined as "[t]hat which is intended: purpose.” Webster’s II New College Dictionary at 576.

. "Purposeful” is defined as "[h]aving a purpose: intentional." Webster’s II New College Dictionary at 900. Additionally, "purpose” is defined as "1. The object toward which one strives or for which something exists: goal. 2. A desired or intended result or effect.” Id.

. "Discrimination” is defined as "[a] prejudiced act.” Webster’s II New College Dictionary at 325.

. "Pretext” is defined as the "[o]stensible reason or motive assigned or assumed as a color or cover for the real reason or motive; false appearance, pretense.” Black's Law Dictionary 1351 (4th ed.1968) (emphasis added). See also Webster’s II New College Dictionary at 876 (defining “pretext” as ”[o]stensible purpose: excuse.”). By contrast, a "mistake” is defined as “1. An error: fault. 2. A misconception: misunderstanding.” Id. at 702.

.Thereby distinguishing this case from Snyder, wherein the United States Supreme Court found that “[leather than making a specific finding on the record concerning Mr. Brooks' demeanor, the trial judge simply allowed the challenge without explanation.” Snyder, 128 S.Ct. at 1209. Nothing in the record renders Circuit Judge Harkey's judgment implausible.

. "Deliberate” is defined as "la. Thought out or planned in advance: Premeditated, lb. Said or done intentionally.” Webster's II New College Dictionary at 298.

. Or "lies,” as referred to by the trial judge. See paragraph 6 supra.