# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-KA-00065-SCT

*JERRIAN DONALD HORNE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/06/1999 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CLIFTON S. GADDIS |
| | PAMELA LUCKIE CASTLE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | E. LINDSAY CARTER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REMANDED FOR A *BATSON* HEARING - 08/30/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BANKS, P.J., WALLER AND COBB, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

### INTRODUCTION

¶1. During a robbery Jerrian Donald Horne and an accomplice shot and killed a convenience store owner and shot and wounded the owner's sister and employee. Horne was convicted of aggravated assault and capital murder. The Forrest County Circuit Court sentenced him to twenty years in the custody of the Mississippi Department of Corrections on the aggravated assault conviction and life imprisonment without possibility of parole on the capital murder conviction, said sentences to run consecutively.

¶2. On appeal, Horne raises issues pertaining to jurisdiction, jury selection, admissibility of incriminating statements, identification testimony, prosecutorial misconduct, demonstrative evidence, pre-sentence report and investigation, and proportionality of the life sentence. We find that the trial court erred in holding that Horne did not make a prima facie showing of a pattern of racial discrimination in jury selection and therefore remand for a *Batson* hearing. We will not address Horne's remaining assignments of error at this time.

### ANALYSIS

## WHETHER THE COURT'S FINDING OF NO PRIMA FACIE CASE OF DISCRIMINATION DURING VOIR DIRE WAS CLEARLY ERRONEOUS.

¶3. Horne, an African-American, claims that the State engaged in racial discrimination in the selection of the jury in contravention of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), and that the fact that the final jury panel was all-white supports this claim. *Puckett v. State*, 2000 WL 706084, #96-DP-00867-SCT & #1999-DP-01437-SCT (Miss. June 1, 2000) (Even though the State used eight of its peremptory strikes against Caucasians and only four against African-Americans, the facts that an all-white jury was empaneled and that the State's four peremptory challenges were made against the only four African-American veniremen in the jury pool made out a prima facie showing of racial discrimination). In the case sub judice, the record shows that the State used ten of its twelve peremptory challenges, six against Caucasian veniremen and four against African-Americans. The alleged discriminatory conduct was that the State struck the *only* African-Americans considered by the parties for service on the jury, leaving an all-white jury.[1] The trial court found that no prima facie showing of racial discrimination had been made by the defense; and therefore, it did not require the State to give race-neutral reasons for its peremptory challenges.

¶4. After a *Batson* objection has been made, a defendant must show that he is a member of a cognizable racial group, that the State has peremptorily challenged members of his race and that the facts and circumstances of the peremptory strikes indicate that the sole reason for the challenge was to indulge in racial discrimination. *See, e.g., Tanner v. State*, 764 So 2d 385, 393 (Miss. 2000). The essential inquiry, however, is whether the defendant has met the burden of showing that the State has engaged in a pattern of strikes based on race or gender, i.e., whether "the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Randall v. State*, 716 So. 2d 584, 587 (Miss. 1998) (citing *Batson*, 476 U.S. at 94,) .

¶5. Here, Horne clearly showed that he was a member of a cognizable racial group and that the State had exercised its peremptory challenges against persons of his race.

¶6. We find that the trial court should have required the State to give race-neutral reasons for its exercise of its peremptory strikes and that this case should be remanded for a *Batson* hearing. The State struck every African-American venireman who was considered by the parties. Under *Puckett*, we have no choice but to remand for a *Batson* hearing. We find that, as a matter of law, if the State uses a peremptory strike against *every* available African-American venireman, a prima facie showing of racial discrimination under *Batson* has been made and the trial court must require the State to present race-neutral reasons for the exercise of its strikes.

¶7. We therefore remand for a *Batson* hearing on this issue.

### CONCLUSION

¶8. Because the trial court erred in failing to require the State to give race-neutral reasons for its exercise of its peremptory strikes against all available African-American veniremen, this matter is remanded to the Forrest County Circuit Court for a *Batson* hearing.

¶9. **REMANDED FOR A *BATSON* HEARING.**

**BANKS AND McRAE, P.JJ., SMITH, MILLS, COBB AND DIAZ, JJ., CONCUR.**

**EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. PITTMAN, C.J., NOT PARTICIPATING.**

1. In selecting the jury for Horne's trial, only the first forty of the sixty-eight veniremen were considered. Out of this sixty-eight, thirteen were African-Americans and fifty-five were Caucasian. Only four of the first forty veniremen were African-Americans. Nine African-Americans were never considered.