# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CT-01686-SCT

*JERRY McGEE*

*v.*

*STATE OF MISSISSIPPI*

## ON MOTIONS FOR REHEARING
## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/25/2001 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS W. POWELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: W. DANIEL HINCHCLIFF |
| DISTRICT ATTORNEY: | ELEANOR FAYE PETERSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS REVERSED, AND THIS CASE IS REMANDED TO THAT COURT FOR A NEW TRIAL - 01/18/2007 |
| MOTIONS FOR REHEARING FILED: | 09/28/2006 |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The motions for rehearing filed by Jerry McGee are granted. The previous opinions

are withdrawn, and these opinions are substituted therefor.

¶2.     Jerry McGee was convicted of two counts of armed robbery by a Hinds County Circuit Court jury and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. The Court of Appeals reversed the judgment of conviction. *See McGee v. State*, ___ So. 2d ___, 2005 WL 2739827 (Miss. Ct. App. 2005). We affirm the decision of the Court of Appeals, reverse the judgment entered and sentence imposed by the Circuit Court of the First Judicial District of Hinds County, and remand for a new trial in accordance with this opinion.

**FACTS**

¶3.     On January 4, 2000, McGee approached two women with an unloaded .12 gauge pistol grip shotgun, which was wrapped up in a yellow cloth, and demanded their money. The women testified they never saw the gun, but they could tell it was a gun under the yellow cloth. The women screamed and ran, and McGee grabbed one of their purses. A nearby security guard heard the screams and saw McGee running toward him with a purse. When the guard gave chase, McGee threw the purse at the guard. The guard tackled McGee, and the shotgun fell to the ground. The guard was able to restrain McGee until police arrived. A Jackson police officer testified that he saw the shotgun on the ground with a yellow cloth wrapped around the handle. He retrieved the gun but left the yellow cloth. McGee signed a confession but denied that he ever exhibited the shotgun or pointed it at the victims.

¶4.     In McGee's first trial, a mistrial was declared because of a hung jury. The second trial resulted in a conviction. The Court of Appeals reversed the conviction, finding that gender discrimination by the State in the selection of the jury warranted a new trial under the plain

error doctrine. We granted the State's petition for writ of certiorari and now find that the Court of Appeals was correct in its decision.

## DISCUSSION

## *BATSON* VIOLATION

¶5.    McGee raised a ***Batson*** challenge during voir dire arguing the State was impermissibly striking African-American jurors.[1]    The prosecutor gave gender as her race-neutral reason for striking a juror:

> BY THE STATE:    Your Honor, on panel number 5 juror number 4, Mr. Washington. I actually liked him. He has a college education, is well-educated except for the fact that his brother apparently was convicted in a drug trial in Madison County, and that did give me some concern. That was the reason I struck him.
>
> BY THE COURT:    But Ms. Deandrea's [another juror] mama was convicted of a drug crime in Hinds County. You didn't strike her.
>
> BY THE STATE:    I agree, Your Honor.
>
> BY THE COURT:    Tell me the difference between her and a black man whose [brother was convicted].

---

[1] When a ***Batson*** challenge is raised, a three-pronged inquiry ensues. First, the party objecting to the peremptory challenge "must make a prima facie showing that race was the criteria for the exercise of the peremptory strike." ***Lynch v. State***, 877 So. 2d 1254, 1270-71 (Miss. 2004). Second, the burden shifts to the party who exercised the challenge to give a race-neutral reason for exercising the peremptory strike. ***Id***. at 1271. Finally, the trial court determines whether the party objecting to the peremptory strike has shown the presence of purposeful discrimination in the strike's use. ***Id***. at 1272. *See **Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

BY THE STATE: Well, Your Honor, it's difficult to take it on a juror by juror basis. I took these jurors as a whole. There weren't any specific things other than the way they-like I said with Mr. Washington, it concerned me that his brother was in Madison County.

Q. But Ms. Deandrea's mama being convicted didn't concern you?

A. And, Your Honor, the reason I don't like trying to do these Batson challenges piecemeal is because it's difficult because there are going to be jurors as we go along throughout this panel that I absolutely accept that are African-Americans that have relatives that have convictions. So it's difficult for me to explain in one case when --

Q. Right now all I'm asking you is explain why you weren't concerned about Ms. Deandrea's mother who has this conviction for a drug offense.

A. Your Honor, that did concern me. The other reason – and it had nothing to do with Mr. Washington's race – it's that he's a male. And I don't know if gender is discrimination or something, but Ms. Deandrea is a female, so between the two, a female or a male, I would rather have a female, you know, taking criminal convictions, if that family member have [sic] criminal convictions.

¶6. McGee made no objection to the State's use of gender as a race-neutral reason for excluding the juror. The Court of Appeals characterized defense counsel's failure to object as a failure to raise a *Batson* issue and found that neglecting to raise such an objection would normally bar McGee's argument concerning the State's use of gender in jury selection. *McGee*, 2005 WL 2739827, at *2-3; *see also Weeks v. State*, 804 So. 2d 980, 987 (Miss.

4

2001). Despite the purported procedural bar, the Court of Appeals reviewed the issue of the juror's exclusion by relying on McGee's right to raise the issue for the first time on appeal under the plain error doctrine. *McGee*, 2005 WL 2739827 at *4. The Court of Appeals found the State's on-the-record admission of gender discrimination cast doubt on the integrity of McGee's entire trial and reversed his conviction and remanded the case for a new trial. We agree with the Court of Appeals' decision.

¶7.     *Batson* and its progeny anticipated a defendant's struggle to show a prosecutor's use of peremptory challenges to rid a jury of members of a specific group based on some distinct characteristic like race or gender. *See Batson*, 476 U.S. at 92-95. *See also J.E.B. v. Alabama*, 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994). The language of *Batson*, however, clearly applies to situations where a pattern of discrimination is present in one party's use of its peremptory challenges. *See Batson*, 476 U.S. at 96-98; *Horne v. State*, 819 So. 2d 1186, 1188 (Miss. 2001); *Randall v. State*, 716 So. 2d 584, 587 (Miss. 1998). The present case, however, did not involve the systematic exclusion of males from a jury but only the exclusion of a single male juror. The State's use of gender as a reason for the exclusion of a male juror from the jury panel violated McGee's rights under the equal protection clause. *See J.E.B.*, 511 U.S. at 130-31.

¶8.     The failure to object to the State's actions during jury selection normally bars the defendant from raising the issue on appeal. *Spicer v. State*, 921 So. 2d 292, 309 (Miss. 2006) (citing *Williams v. State*, 684 So. 2d 1179, 1203 (Miss. 1996)); *see also Chase v. State*, 645 So. 2d 829, 843-44 (Miss. 1994) (where we applied a procedural bar to a *Batson* issue

5

when the defendant failed to raise it during his trial). However, if there is a finding of plain error, a reviewing court may consider the issue regardless of the procedural bar. A review under the plain error doctrine is necessary when a party's fundamental rights are affected, and the error results in a manifest miscarriage of justice. *Williams v. State*, 794 So. 2d 181, 187-88 (Miss. 2001). To determine if plain error has occurred, we must determine "if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial." *Cox v. State*, 793 So. 2d 591, 597 (Miss. 2001) (relying on *Grubb v. State*, 584 So. 2d 786, 789 (Miss. 1991); *Porter v. State*, 749 So. 2d 250, 260-61 (Miss. Ct. App. 1999)).

¶9. Allowing the State to exclude the potential juror based on his gender was indeed a deviation from sound precedent. *See* *J.E.B.*, 511 U.S. at 139-41; *Duplantis v. State*, 644 So. 2d 1235, 1246 (Miss. 1994). Therefore, we will review McGee's claim of a *Batson* violation under the plain error doctrine. The record undoubtedly shows the prosecutor had a discriminatory intent in her attempt to prevent Washington from being seated as a juror.

¶10. A "defendant [has] the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria. *J.E.B.*, 511 U.S. at 129. In *J.E.B.*, the Supreme Court stated,

> we have reaffirmed repeatedly our commitment to jury selection procedures that are fair and nondiscriminatory. We have recognized that whether the trial is criminal or civil, *potential jurors, as well as litigants, have an equal protection right to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice.*

6

*Id.* (emphasis added). More specifically, the Court held "[i]ntentional discrimination on the basis of gender by state actors violates the Equal Protection Clause, particularly where, as here, the discrimination serves to ratify and perpetuate invidious, archaic, and overbroad stereotypes about the relative abilities of men and women." *Id.* at 130-31. Moreover, "a consistent pattern of official racial discrimination is [not] a necessary predicate to a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 n.14, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977).

¶11.   Based on the above precedent, we find that, because the State admitted that it was discriminating against a man in its use of a peremptory strike, McGee's right to equal protection was violated. We further find that, based on the above precedent, only one instance – not a consistent pattern – of purposeful discrimination is enough to prove a discriminatory purpose. Because McGee's right to equal protection was violated, the entire judicial process was infected, and we must reverse the judgment of conviction and remand for a new trial.

**CONCLUSION**

¶12.   We affirm the judgment of the Court of Appeals, reverse the judgment entered by and the sentence imposed by the Circuit Court of the First Judicial District of Hinds County, Mississippi, and remand this case to the circuit court for a new trial in accordance with this opinion.

¶13.   **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF**

**HINDS COUNTY IS REVERSED, AND THIS CASE IS REMANDED TO THAT COURT FOR A NEW TRIAL.**

**SMITH, C.J., COBB, P.J., DIAZ, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DICKINSON, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, CARLSON AND RANDOLPH, JJ. GRAVES, J., NOT PARTICIPATING.**

**DICKINSON, JUSTICE, SPECIALLY CONCURRING:**

¶14. This case presents us with an unusually stark and clear episode of a prosecutor violating the fundamental constitutional rights of both the accused and a prospective juror by excluding the juror because of his gender. When challenged by the trial court as to whether her peremptory strike was racially motivated, the prosecutor unambiguously stated on the record that she was exercising a peremptory strike on Juror Washington, not because of his race, but because "he's a male." The prosecutor attempted to justify this discriminatory strike by saying, "[a]nd I don't know if gender is discrimination or something, but Ms. Deandrea is a female, so between the two, a female or a male, I would rather have a female . . . ." Suffice it to say, the prosecutor in this case engaged in blatant, impermissible discrimination.

¶15. The law pertaining to racial discrimination in jury selection applies equally to gender discrimination. Undeniably, lawful discrimination based upon gender in jury selection continued long after the United States Supreme Court held in *Strauder v. West Virginia*, 100 U.S. 303, 310, 25 L. Ed. 664 (1880), that purposeful exclusion of jurors based on race violates the Equal Protection Clause of the Fourteenth Amendment to the Federal

8

Constitution. In fact, the **Strauder** Court specifically held that the State "may confine the selection [of jurors] to males." **Id.**

¶16. This wall of discrimination began to crumble, though, in 1946 when the Court held that, in states where local law[2] allowed women to serve on juries in state court, women could not be excluded from the venire in federal court. **Ballard v. United States**, 329 U.S. 187, 193, 67 S. Ct. 261, 91 L. Ed. 181 (1946). The *coup de gras* was delivered in 1994 when the Court held in **J.E.B. v. Alabama ex rel**. **T.B.,** 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994) that "[d]iscrimination in jury selection, whether based on race or on gender" violates the Equal Protection Clause of the Fourteenth Amendment. 511 U.S. at 140. The Court went on to state

> the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man. As with race, the 'core guarantee of equal protection, ensuring citizens that their State will not discriminate . . . , would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' [gender].

**Id.** at 146 (quoting **Batson v. Kentucky**, 476 U.S. 79, 97-98, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986)). The **J.E.B.** Court also stated that "[f]ailing to provide jurors the same protection against gender discrimination as race discrimination could frustrate the purpose of *Batson* itself." 511 U.S. at 145. Thus, any discussion of the law pertaining to racial discrimination in jury selection applies equally to discrimination based upon gender.

---

[2] Mississippi continued to prohibit women from serving on juries as late as 1961. *See* **J.E.B. v. Alabama ex rel. T.B.**, 511 U.S. 127, 132 n.3, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994) (citing **Hoyt v. Florida**, 368 U.S. 57, 62, 82 S. Ct. 159, 7 L. Ed. 2d 118 (1961)).

*A pattern of discrimination is not required.*

¶17. Although the Supreme Court's decision in **Batson** postdated **Strauder** by over a century, **Batson** provided significant elaboration and the process to be followed when discrimination in jury selection is suspected. In **Batson**, the prosecutor used peremptory strikes to exclude all four African-Americans on the venire, and the defendant was convicted by an all-white jury. 476 U.S. at 83. Relying on **Swain v. Alabama**, 380 U.S. 202, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965), the Supreme Court of Kentucky affirmed the conviction, stating "a defendant alleging lack of a fair cross section must demonstrate systematic exclusion of a group of jurors from the venire." **Batson**, 476 U.S. at 84. In reversing the Kentucky court, the United States Supreme Court made it crystal clear that to prevail on a "*Batson* challenge," a defendant is not required[3] to demonstrate a pattern or multiple instances of discrimination:

> [T]his Court has recognized that a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on the facts concerning its selection **in his case**. These decisions are in accordance with the proposition, articulated in *Arlington Heights v. Metropolitan Housing Development Corp.*, that **'a consistent pattern of official racial discrimination' is not 'a necessary predicate to a violation of the Equal Protection Clause.** A single invidiously discriminatory governmental act' is not 'immunized by the absence of such discrimination in the making of other comparable decisions.' 429 U.S. at 266 n.14. For evidentiary requirements to dictate that 'several must suffer discrimination' before one could object, *McCray v. New York*, 461 U.S. at 965 (Marshall, J., dissenting from denial of certiorari), would be inconsistent with the promise of equal protection to all.

---

[3] In fact **Batson** overruled **Swain** to the extent that case required a petitioner to establish a systematic pattern of discrimination in jury selection in order to prevail. **Batson**, 476 U.S. at 100.

10

***Batson***, 476 U.S. at 95-96 (first emphasis in original; remaining emphasis added).[4]

¶18. In light of this clear guidance, a pattern of discrimination is not a prerequisite for demonstrating a ***Batson*** violation. The prosecutor's admittedly discriminatory reasoning for striking Juror Washington was sufficient.

*Batson protects the rights of both the defendant and the potential juror.*

¶19. I wholeheartedly agree with the majority's conclusion that Jerry McGee's constitutional rights were violated. I also find the conclusion inescapable that the discriminatory exclusion of Juror Washington violated his own constitutional rights as well.

¶20. The ***Batson*** Court squarely addressed this issue. After establishing that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection," ***id.*** at 86, the Court went on to say

> [r]acial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try. Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at a trial. *See Thiel v. Southern Pacific Co.*, 328 U.S. 217, 223-24. A person's race simply 'is unrelated to his fitness as a juror.' *Id.* at 227 (Frankfurter, J., dissenting). As long ago as *Strauder*, therefore, the Court recognized that by denying a person participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded juror. 100 U.S. at 308.

***Batson***, 476 U.S. at 87. The Court later, in ***J.E.B.***, echoed this holding and applied it to discrimination based on gender:

---

[4] While a "pattern" of strikes against a set of jurors can give rise to an inference of discrimination, "**the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may [also] support . . . an inference of discriminatory purpose**." ***Batson***, 476 U.S. at 97 (emphasis added). This is precisely the scenario presented for our consideration in this case.

11

In recent cases we have emphasized that individual jurors themselves have a right to nondiscriminatory jury selection procedures. [Citations omitted.] Contrary to respondent's suggestion, this right extends to both men and women. *See Mississippi Univ. For Women v. Hogan*, 458 U.S. at 723 (that a state practice 'discriminates against males rather than against females does not exempt it from scrutiny or reduce the standard of review'). . . . All persons, when granted the opportunity to serve on a jury, have the right not to be excluded summarily because of discriminatory and stereotypical presumptions that reflect and reinforce patterns of historical discrimination.

*J.E.B.*, 511 U.S. at 140-42. Thus, it is beyond debate that the prosecutor in this case violated not only the constitutional rights of Jerry McGee, but also those of Juror Washington.

*Plain error – certain errors are never harmless*

¶21. The exclusion of Juror Washington based on his gender was, indeed, plain error. Significantly, the defendant, in this case, was not required to demonstrate that the constitutional violation prejudiced the outcome of his trial.

¶22. First, in the context of harmless error analysis, the United States Supreme Court has categorized constitutional errors into two groups: trial errors and framework errors. Trial errors are those "which occur[] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determined whether its admission was harmless beyond a reasonable doubt." *Arizona v. Fulminante*, 499 U.S. 279, 307-08, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). These errors are subject to harmless error analysis.

¶23. Certain errors, however, may never be considered harmless. These include constitutional deprivations involving a "structural defect affecting the framework within which the trial proceeds," rather than an error in the trial itself. *Id.* at 310. Clearly, the discriminatory striking of a juror based on his gender directly impacts the integrity of the

judicial process and "affect[s] the framework within which the trial proceeds." *Id.* *Cf.* *Vasquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986) (unlawful exclusion of African-Americans from grand jury is not subject to harmless error analysis).

¶24. Where, as here, a clear, unambiguous violation of a defendant's fundamental constitutional right affects the structure of the trial itself, this Court will not excuse that violation because of the defendant's inability or failure to demonstrate prejudice. Were such a demonstration required, how would any defendant in McGee's position meet such a burden? The argument that excluding one male is permissible where other men on the jury can represent the "male point of view" is anathema to the United States Supreme Court's guiding principle in *J.E.B.* that gender stereotypes and generalizations have no place in the courtroom. 511 U.S. at 140. A defendant cannot be called upon to pinpoint or demonstrate what prejudice he suffered in the outcome of his trial when the framework of the trial itself is compromised.

¶25. This Court has held "that a finding of plain error is necessary when a party's fundamental rights are affected." *Williams v. State*, 794 So. 2d 181, 188 (Miss. 2001) (citing *Grubb v. State*, 584 So. 2d 786, 789 (Miss. 1991)). The United States Supreme Court has also categorized as plain error "those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Young*, 470 U.S. 1, 15, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S. Ct. 391, 80 L. Ed. 555 (1936)). Regardless of whether a defendant can demonstrate prejudice, we will not excuse discrimination when it infects our judicial system:

Discrimination in jury selection, whether based on race or on gender, causes harm to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process. The litigants are harmed by the risk that the prejudice that motivated the discriminatory selection of the jury will infect the entire proceedings. *See Edmonson*, 500 U.S. at 628 (discrimination in the courtroom 'raises serious questions as to the fairness of the proceedings conducted there."). The community is harmed by the State's participation in the perpetuation of invidious group stereotypes and the inevitable loss of confidence in our judicial system that state-sanctioned discrimination in the courtroom engenders.

*J.E.B.*, 511 U.S. at 140.

¶26. There must be clear and certain consequences to the blatant violation of a fundamental constitutional right. To hold otherwise is to free the State to commit those violations so long as the case against the defendant is strong. This Court must refuse to emasculate fundamental rights by expanding exceptions to create a disincentive for the protection of those rights. The erosion of constitutional rights inevitably leads to ignorance by some that those rights even exist.[5] As the United States Supreme Court has explained, "[t]he message it sends to all those in the courtroom, and all those who may later learn of the discriminatory act, is that certain individuals, for no reason other than gender, are presumed unqualified by state actors to decide important questions upon which reasonable persons could disagree." *Id.* at 141. This Court will not permit such a message to be broadcast to the citizens of Mississippi.

¶27. Finally, Juror Washington had a constitutional right not be excluded from jury service simply because of his gender. As stated above, "individual jurors themselves have a right

_____

[5] Indeed, the prosecutor in this case was completely unaware that gender discrimination was unconstitutional.

14

to nondiscriminatory jury selection procedures." *Id.* at 140-41. However, even if we were to require Juror Washington to demonstrate prejudice in this case, the prejudice is quite obvious; he was sent home.

¶28. For the reasons stated, I concur with the majority's decision to affirm the Court of Appeals' judgment, reverse the trial court's judgment, and remand this case for a new trial, free of violation of the constitutional rights of the defendant and the prospective jurors.

**SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, CARLSON AND RANDOLPH, JJ., JOIN THIS OPINION.**