# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00844-COA

**GEORGE LOMAX** APPELLANT

v.

**STATE OF MISSISSIPPI** APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/24/2015 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAMON RAMON STEVENSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | AKILLIE MALONE OLIVER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SEXUAL BATTERY AND SENTENCED TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWENTY YEARS TO SERVE, FOLLOWED BY FIVE YEARS OF SUPERVISED PROBATION AND FIVE YEARS OF UNSUPERVISED PROBATION, AND TO REGISTER AS A SEX OFFENDER |
| DISPOSITION: | AFFIRMED: 02/21/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     George Lomax was convicted of the sexual battery of Abby,[1] a sixteen-year-old student at the high school where Lomax was assistant principal. Lomax was accused of

---

[1] We use fictitious names to protect the identity of minors who are victims of sexual abuse.

ordering the girl to an unoccupied room, where he instructed her to remove her clothes and had sex with her. The victim reported the incident a short time later, and Y-DNA consistent with Lomax's was found in her underwear. Lomax was convicted, and he appeals, challenging the trial court's decisions on jury selection and evidentiary issues. We find no error and affirm.

## DISCUSSION

### 1. Prosecution Challenge for Cause

¶2. During voir dire, the prosecution successfully challenged for cause a juror whose niece and nephew had been represented by Lomax's attorney in a prior felony case. On appeal, Lomax contends that this was an insufficient basis to strike the juror for cause because she maintained she could still be fair and impartial.

¶3. "Generally, a juror removed on a challenge for cause is one against whom a cause for challenge exists that would likely affect his competency or his impartiality at trial." *Berry v. State*, 703 So. 2d 269, 292 (¶85) (Miss. 1997) (citation omitted). But "[t]he selection of jurors is a judgment call peculiarly within the province of the circuit judge, and one we will not on appeal second guess in the absence of a record showing a clear abuse of discretion." *Adkins v. Sanders*, 871 So. 2d 732, 740 (¶31) (Miss. 2004) (citation and internal quotation marks omitted). The "trial court is entitled to deference when its for cause strikes are reviewed because of its ability to evaluate the demeanor of potential jurors . . . ." *Berry*, 703 So. 2d at 292 (¶87).

¶4. Contrary to Lomax's contentions, it does not appear that the juror was struck for cause because of her family's prior representation by Lomax's attorney. Instead, the juror had failed to respond when the venire was questioned regarding whether a family member had been accused of a crime. She attributed this to low blood sugar and back pain.

¶5. Because of the juror's failure or inability to respond to questions during voir dire and her admitted health issues that would have made it difficult for her to serve on the jury, we can find no abuse of discretion in the trial court's decision to excuse her for cause.

### 2. Defense Challenge for Cause

¶6. Next, Lomax challenges the trial court's refusal to remove for cause Juror 8, who had stated he was "friends with" the victim's father. When questioned whether he could be impartial, Juror 8 stated that he could. No further information was elicited from this venireman, and the trial court refused to strike him for cause.

¶7. As noted in our discussion of the previous issue, we afford great deference to the trial court in deciding whether to remove a juror for cause. *See Berry*, 703 So. 2d at 292 (¶85). Moreover, "[b]efore a claim related to a denial of a challenge for cause may be valid, (1) the defendant must have exhausted all of his peremptory challenges and (2) an incompetent juror must be forced by the trial court's erroneous ruling to sit on the jury." *Burgess v. State*, 178 So. 3d 1266, 1276 (¶28) (Miss. 2015).

¶8. Lomax struck Juror 8 with a peremptory challenge, and he used all six of his peremptory challenges. But he makes no effort to show that an incompetent juror

3

nonetheless sat on the jury. Thus, Lomax has failed to show reversible error on this point.

### 3. *Batson* Challenge

¶9. Next, we address Lomax's contention that the trial court erred in overruling his *Batson*[2] challenge to the prosecutor's use of peremptory challenges, which were alleged to have been used in a discriminatory manner against African-American males.

¶10. "When a *Batson* issue arises, the trial judge acts as the finder of fact." *Walker v. State*, 815 So. 2d 1209, 1215 (¶12) (Miss. 2002). Appellate courts therefore afford "great deference to a trial-court ruling on a *Batson* challenge." *Hughes v. State*, 90 So. 3d 613, 626 (¶38) (Miss. 2012).

¶11. *Batson* challenges in the trial court proceed through a three-step process:

(1) the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose;

(2) once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial [or sexual] exclusion by offering permissible, race-neutral justifications for the strikes; and

(3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial [or sexual] discrimination.

*Pruitt v. State*, 986 So. 2d 940, 942-43 (¶8) (Miss. 2008).

¶12. Here, the *Batson* challenge did not proceed past the first step. The State tendered a jury to Lomax after using two of its six peremptory challenges, which Lomax challenged

---

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

under *Batson*.[3] Both of the strikes were against black males. The panel tendered by the State consisted of eleven African-Americans (three male and eight female) and one white male. Lomax offered in support of his challenge only what was essentially a conclusory statement that the jurors could not be struck for cause.

¶13. On appeal, Lomax contends that this case presents a novel question under Mississippi law – whether race/sex combinations constitute a cognizable group for *Batson* purposes. In *Ross v. State*, 16 So. 3d 47, 58-60 (¶¶28-32) (Miss. Ct. App. 2009), this Court observed that the question was one of first impression in Mississippi and "a developing and divisive issue" in other courts. But the issue arose in *Ross* in the context of assertions of plain error and ineffective assistance of counsel, and this Court did not reach the merits of the argument. *See id*. at 60 (¶32). We likewise find no need to resolve the question today, because Lomax's challenge fails even if we assume black male veniremen are a cognizable group for the purposes of this analysis.

¶14. "A defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred. If the defendant fails to make out a prima facie case showing a discriminatory purpose, the inquiry ends." *Smith v. State*, 90 So. 3d 122, 132 (¶37) (Miss. Ct. App. 2012) (citations and internal quotation marks omitted).

---

[3] Lomax initially made the *Batson* challenge immediately after the State struck its first venireman, who was the very first venireman on the list (i.e., Juror 1). The trial judge withheld ruling on the objections until the entire panel was tendered.

¶15. Lomax bases his argument almost entirely on his unsupported assertions that the prosecutors struck two of the three black male veniremen offered and that the only remaining black male juror was Juror 8, who had identified himself as a "friend" of the victim's father. But the record simply does not bear that claim out. Instead, it was observed on the record, without contradiction, that the jury tendered by the prosecution had four males, three of whom were black, and eight black females. Otherwise, Lomax offers only the unsupported claim that there was nothing to distinguish the struck jurors from those who were accepted by the State. This assertion seems to be manifestly false, as both of the veniremen who were struck admitted to previously having been accused or convicted of crimes – one had served three years of nonadjudicated probation for grand larcey, and the other had recently faced charges in a second-offense DUI. We find no abuse of discretion in the trial court's finding that Lomax failed to make a prima facie case of discrimination in the prosecutor's peremptory strikes.

### 4. Admission of Hearsay

¶16. Next, Lomax contends that his attorney was constitutionally ineffective in failing to object to hearsay testimony relating statements of the victim to a friend, an investigator, and an attending nurse. He also contends that admission of the statements was erroneous. We address that contention first.

¶17. Lomax admits that he failed to object at trial to any testimony he now complains of on appeal, but he does not argue that admitting the evidence amounted to plain error.

6

Consequently, these contentions are barred on appeal. *Redmond v. State*, 66 So. 3d 107, 110-11 (¶11) (Miss. 2011).

### 5.  Ineffective Assistance of Counsel

¶18.  The gravamen of Lomax's complaints on these issues is his claim that his counsel was constitutionally ineffective for failing to object to hearsay statements of the victim. The first was a short summary of the incident, related by a schoolmate of the victim. The friend was the first person the victim told about the incident, a short time after it actually occurred. She described the victim as visibly shaken – trembling, hyperventilating, and crying. Lomax also complains about short summaries of the incident as related by the victim to a police investigator, and, a short time later, to an attending nurse. Both of these also occurred within a few hours of the incident. The nurse testified that the account given to her was for the purpose of the victim's medical treatment, but she also described the victim as still under the stress of the incident; while she was examined, the victim looked downwards and manifested a "flat affect" (meaning a severe reduction in emotional expressiveness). Finally, Lomax complains about hearsay testimony from the victim's friend that, some time later, the victim had stated that she was telling the truth. We note also that the victim testified at the trial and was subject to cross-examination.

¶19.  The Mississippi Supreme Court has stated:

> It is unusual for this [c]ourt to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal. This is because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim . . . .

> [W]here the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief. This Court will rule on the merits on the rare occasions where (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.

*Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003) (internal citations and quotations omitted). Here, the State expressly declines to stipulate that the record is adequate to allow this Court to make a determination.

¶20. To succeed on an ineffective-assistance-of-counsel claim, Lomax must satisfy the two-pronged test laid out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and adopted by the Mississippi Supreme Court in *Stringer v. State*, 454 So. 2d 468, 476-77 (Miss. 1984). "First, the defendant must show that counsel's performance was deficient . . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 477 (quoting *Strickland*, 466 U.S. at 687).

¶21. The record here does not affirmatively indicate that Lomax suffered denial of effective assistance of counsel of constitutional dimensions. Instead, it appears that much of the complained-of hearsay was either harmless or would have fallen within the hearsay exceptions for excited utterances and statements for the purpose of medical diagnosis or treatment. *See* M.R.E. 804(2), (4). But because the State has not stipulated that the record is adequate for final disposition of this issue, we decline to decide it, and we deny relief without prejudice to Lomax's right to seek post-conviction relief if he chooses to do so.

8

### 6. Prosecutorial Misconduct

¶22. Lomax next contends that the prosecutor committed misconduct during the direct examination of the victim's friend, to whom the victim had first disclosed the incident. The prosecutor had asked the friend how the other children at school had reacted to the victim's allegations. Lomax objected on the grounds of relevance, and his objections were overruled. The friend answered that the other students' responses had been negative and that they treated the victim as if she had lied. The prosecutor then (after another relevance objection) asked how the victim had felt about this, and the following exchange occurred:

> Q.    Did [the victim] tell you how this made her feel with kids talking [–] making fun of her and talking about her?
>
> A.    Yes, she said. She said it made her feel bad. Because she wasn't lying. She was telling the truth, I mean.
>
> Q.    As far as your personal knowledge had Mr. Lomax done anything inappropriate around you?
>
> [Lomax's attorney]: Objection, Your Honor.
>
> THE COURT: Sustained.

¶23. Lomax contends on appeal that "this question was wholly inappropriate and inflammatory and denied [him] a fair trial by implying that [he] was guilty of other misconduct."

¶24. We agree that a prosecutor may not use leading questions to insinuate misconduct of the defendant, nor may she ask questions without a good faith basis. *Hosford v. State*, 525 So. 2d 789, 793 (Miss. 1988). But in this particular instance, the prosecutor's question may

9

have been an attempt to clarify the witness's prior answer as to whether the witness personally knew the victim was not lying or whether she was just relating what the victim had told her. Regardless, Lomax's objection was sustained. "The rule is well established that when an isolated prejudicial question or comment by the prosecution is promptly objected to and the objection is sustained, and particularly when the circuit judge instructs the jury to disregard the incident, there is a presumption the action on the part of the trial court cured the error." *Smith v. State*, 530 So. 2d 155, 161 (Miss.1988). While the trial court did not instruct the jury to disregard that particular question, Lomax did not ask it to do so. The trial judge did, however, give jury instruction C-CR-1, which stated in relevant part that the jury "should not speculate as to possible answers to questions which the Court did not require to be answered, and . . . should not draw any inference from the content of those questions."

¶25. We conclude that Lomax has failed to show any reversible error on this point.

### 7. Exclusion of DNA Evidence

¶26. Finally, Lomax contends that the trial court "erred in refusing to allow evidence that the DNA testing of [the victim's] panties revealed the presence of another male profile." This contention is perplexing, as the trial judge appears to have made no such decision, and the jury heard the evidence Lomax claims was precluded – that in addition to Y-DNA consistent with that of Lomax, trace amounts of Y-DNA from at least two other male individuals were found on the victim's underwear. The jury also heard that sexual contact

10

was one possible source of the Y-DNA.[4]

¶27. We find no merit to this issue.

¶28. **THE JUDGMENT OF THE CIRCUIT COURT OF HOLMES COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWENTY YEARS TO SERVE, FOLLOWED BY FIVE YEARS OF SUPERVISED PROBATION AND FIVE YEARS OF UNSUPERVISED PROBATION, AND TO REGISTER AS A SEX OFFENDER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.**

---

[4] The State's expert testified that Y-DNA could be also transferred by casual contact, from a variety of sources including skin cells, and that the strength of the samples did not necessarily imply more significant contact.