# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01050-COA

**MATTHEW DIXON A/K/A MATTHEW WAYNE DIXON**      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/03/2019 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/28/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1. A Forrest County grand jury indicted Matthew Wayne Dixon for one count of felony eluding. Following a jury trial, Dixon was convicted as charged and sentenced to serve three years in the custody of the Mississippi Department of Corrections (MDOC). Dixon filed a post-trial motion for judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, which the trial court denied. From that denial, Dixon now appeals.

### STANDARD OF REVIEW

¶2.    "When a *Batson*[1] issue arises, the trial judge acts as the finder of fact." *Walker v.*

*State*, 815 So. 2d 1209, 1215 (¶12) (Miss. 2002).  The appellate court

> gives great deference to a trial court's determinations under *Batson* because
> they are based largely on credibility. *Berry v. State*, 802 So. 2d 1033, 1037
> (Miss. 2001) (citations omitted).  In reviewing a claim for a *Batson* violation,
> "we will not overrule a trial court on a *Batson* ruling unless the record
> indicates that the ruling was clearly erroneous or against the overwhelming
> weight of the evidence." *Thorson v. State*, 721 So. 2d 590, 593 (Miss. 1998).

*Hicks v. State*, 973 So. 2d 211, 218 (¶23) (Miss. 2007) (quoting *Flowers v. State*, 947 So. 2d

910, 917-18 (¶8) (Miss. 2007)).

## FACTS AND PROCEDURAL HISTORY

¶3.    On December 16, 2017, Forrest County Sheriff's Deputy Scott Smith observed

Matthew Dixon driving while patrolling the area near J B Horne Road.  Deputy Smith was

aware that Dixon's driver's license was suspended; he activated the lights and sirens on his

patrol car as a signal for Dixon to pull over.  Deputy Smith testified that Dixon then "sped

up away from [him]" in an effort to elude the traffic stop.  As the pursuit continued, the two

vehicles reached speeds of roughly eighty to eighty-five miles per hour.  After a two-mile

chase, Deputy Smith caught up with Dixon's vehicle and used the front of his patrol car to

tap Dixon's bumper.  The push sent Dixon's vehicle into a ditch where it rested.  With the

chase having ended, Deputy Smith took Dixon into custody without resistance.

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (holding that peremptory challenges are subject to the Equal Protection Clause and may not be exercised to exclude potential jurors on the basis of race).

¶4. On May 23, 2018, a Forrest County grand jury indicted Dixon for one count of felony eluding law enforcement in violation of Mississippi Code Annotated section 97-9-72(2) (Rev. 2014). Dixon's trial began on March 19, 2019. During voir dire, the State used five of its six peremptory strikes on female venire members. Dixon's attorney raised a *Batson* challenge, alleging that the prosecution engaged in purposeful discrimination against females. The trial court ended the challenge after ruling that Dixon failed to show that the State "exercised its challenges in a discriminatory manner or basis." Dixon's final jury included eight female members. At the conclusion of the trial, Dixon was convicted as charged and sentenced to serve three years in the custody of the MDOC.[2] On May 6, 2019, Dixon filed a post-trial motion for a JNOV or, alternatively, a new trial.[3] The trial court entered an order denying Dixon's post-trial motion on June 4, 2019; from that denial, Dixon now appeals.

## DISCUSSION

¶5. The issue in this case is whether the trial court erred in concluding that Dixon failed to establish a prima facie case of discrimination. In this sole issue on appeal, Dixon argues that the trial court performed an incomplete *Batson* analysis, during which it concluded that Dixon failed to establish a prima facie case of gender discrimination. The following colloquy reflects the objection raised by Dixon's defense counsel:

---

[2] Dixon has since been released on parole.

[3] Dixon did not raise the *Batson* issue with specificity in his post-trial motion for a JNOV.

| [DEFENSE COUNSEL]: | Your Honor, every single juror struck by the State so far has been a female juror, and additionally based on my notes all but one of those jurors struck have been black, African-American,[4] and I think that there is definitely some gender discrimination going on here, and we would object to the tendered 12 on that basis. |
|---|---|
| THE COURT: | Well, I disagree with you. I don't think based on what I'm seeing as - - let's see. There's five. The State has accepted five females if I count it right on the jury. I don't see the basis for a challenge as to sex at this time. |
| [DEFENSE COUNSEL]: | Yes, sir. |
| THE COURT: | Let me put it this way. I do not find based on what I see at this time that the State's exercised its challenges in a discriminatory manner or basis. |
| [DEFENSE] COUNSEL: | Yes, sir. . . . |

After the court determined that there was no evident "basis for a challenge as to sex," Dixon's defense counsel conceded and did not renew the *Batson* challenge or raise any additional challenges during the selection of petit jury.[5]

¶6.    In *Batson*, the United States Supreme Court ruled that the Fourteenth Amendment's Equal Protection Clause[6] "prohibits all forms of purposeful racial discrimination in [the]

---

[4] Dixon's attorney mentioned the stricken jurors' races but only stated a clear objection on the basis of gender discrimination.

[5] At the time Dixon raised the *Batson* challenge, the State had one remaining peremptory strike, which it used to strike another female juror.

[6] U.S. Const. amend. XIV, §2.

selection of jurors." *Batson*, 476 U.S. at 88. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130-31 (1994), extended the scope of *Batson* and its Fourteenth Amendment protections to bar the exercise of peremptory challenges for the purpose of gender discrimination. "*J.E.B.* held that 'gender, like race, is an unconstitutional proxy for juror competence and impartiality.'" *Ryals v. State*, 794 So. 2d 161, 165 (¶11) (Miss. 2001) (quoting *J.E.B.*, 511 U.S. at 128)).

¶7.     The defendant bears the initial burden in the three-step process when a *Batson* or *J.E.B.* challenge arises:

> **(1) the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose;**
>
> (2) once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial [or gender] exclusion by offering permissible, race-neutral justifications for the strikes; and
>
> (3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial [or gender] discrimination.

*Lomax v. State*, 220 So. 3d 211, 214 (¶11) (Miss. Ct. App. 2017) (emphasis added) (quoting *Pruitt v. State*, 986 So. 2d 940, 942-43 (¶8) (Miss. 2008)). "A defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred. If the defendant fails to make out a prima facie case showing a discriminatory purpose, the inquiry ends." *Smith v. State*, 90 So. 3d 122, 132 (¶37) (Miss. Ct. App. 2012) (citations and internal quotation marks omitted).

5

The trial court ended Dixon's *J.E.B.* challenge in the first phase, finding that he failed to make a prima facie showing of gender-based discrimination. We agree.

¶8.     The United States Supreme Court has held that "a party alleging gender discrimination must make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike." *J.E.B.*, 511 U.S. at 144-45 (citing *Batson*, 476 U.S. at 97). *Batson* and *J.E.B.* provide that to establish a prima facie case of gender-based discrimination, a defendant must show that

> [(1)] he/she is a member of a cognizable gender group;
>
> [(2)] the prosecutor has exercised peremptory challenges to remove from the venire members of his/her gender;
>
> **[(3)] the facts and any other relevant circumstances raise an inference that the prosecution excluded potential jurors on the basis of their gender.**

*Ryals*, 794 So. 2d at 165 (¶11) (emphasis added) (citing *J.E.B.*, 511 U.S. at 144-45)). The United States Supreme Court's holding in *Powers v. Ohio*, 499 U.S. 400, 416 (1991), modified the requirements for a prima facie showing of discrimination; the decision "in essence eliminated the first two factors required by *Batson*." *Ryals*, 794 So. 2d at 166 (¶13) (citing *Puckett v. State*, 788 So. 3d 752, 757 (¶10) (Miss. 2000)). "Thus, the pivotal question is whether the opponent of the strike has met the burden of showing that proponent has engaged in a pattern of strikes based on race or gender, or in other words the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Id*. (internal quotation marks omitted) (quoting *Randall v. State*, 716 So. 2d 584, 587 (¶11) (Miss. 1998)); *see also*

*Batson*, 476 U.S. at 94.

¶9.    In support of his contention, Dixon cites *McGee v. State*, 953 So. 2d 211 (Miss. 2007). Without objection from McGee, the State offered gender as a race neutral reason for striking jurors. *Id*. at 214 (¶6). Absent an objection, the trial court allowed the State to exclude the potential juror because of gender. *Id*. at 215 (¶9). The Mississippi Supreme Court reviewed the prosecution's clearly stated intention to exclude a juror "because he's a male" under the plain-error doctrine and affirmed our reversal of the trial court's judgment. *Id*. at 215-16 (¶¶9-12). In Dixon's case, the record does not evince "blatant, impermissible discrimination," by the prosecution and renders Dixon's reliance on *McGee* misplaced. *Id*. at 216 (¶14) (Dickinson, J., specially concurring).

¶10.   Although "defendants are not entitled to a jury of any particular composition,"[7] our courts have held that a defendant may show a prima facie case of discrimination "by demonstrating that the percentage of . . . peremptory strikes exercised on members of the protected class was significantly higher than the percentage of members of the protected class in the venire." *Pitchford v. State*, 45 So. 3d 216, 225 (¶15) (Miss. 2010) (citing *Strickland v. State*, 980 So. 2d 908, 916 n.1 (Miss. 2008)). *See Flowers v. State*, 947 So. 2d 910, 935-936 (¶66) (Miss. 2007) (holding that a strong prima facie case for racial discrimination was evidenced by prosecution's use of all peremptory strikes on African Americans, which resulted in only one African American jury member although African Americans comprised

---

[7] *Ryals*, 794 So. 2d at 165 (¶10).

forty percent of the jury pool). By comparison, the jury panel at the time of Dixon's *Batson* challenge included five female jurors;[8] the prosecution had exercised five of its peremptory strikes on female venire members. Sixty-four percent of the venire was composed of female jurors, as was sixty-seven percent of Dixon's petit jury. The female presence on Dixon's petit jury not only aligned with the female makeup of the venire, it exceeded it.

¶11. The State directs our attention to *Lomax*, where this Court affirmed a trial court's dismissal of the defendant's *Batson* and *J.E.B.* challenges in the first step. *Lomax*, 220 So. 3d at 214 (¶12). Lomax challenged the prosecution's peremptory strikes of two black males as discriminatory, offering only a conclusory statement of the stricken veniremen's race and gender. *Id*. at (¶15). Because the stricken jurors' voir dire responses had provided a gender/race neutral basis for the prosecution's rejection and because the tendered panel included four males (three black), the Court held that Lomax "failed to make a prima facie case of discrimination in the prosecutor's peremptory strikes." *Id*. Contrary to Dixon's assertion, the panel tendered by the prosecution included five female jurors and he too offered only a conclusory statement to establish the prosecution's discriminatory intent.

¶12. One reason the trial court is accorded great deference with regard to a *Batson* issue's factual findings is that "[t]he credibility of the one making the challenge is often decisive." *Webster v. State*, 754 So. 2d 1232, 1236 (¶10) (Miss. 2000). The trial court must also consider "other relevant circumstances, such as the way prior peremptory strikes have been

---

[8] The final jury that ultimately convicted Dixon consisted of eight female members.

used and the nature of the questions on voir dire." *Id*. Here, Dixon fails to "fully articulate and explain the third *Batson* prong, the crucial element needed for a prima facie case" and relies on the singular fact that the prosecution exercised five of its six peremptory challenges against women (at the time of his challenge). *Ryals*, 794 So. 2d at 166 (¶16).

¶13.    *In Ryals*, the Mississippi Supreme Court rejected the defendant's argument that the trial court erred by dismissing her *Batson* claim and found that a prima facie case for gender discrimination had not been established at trial. *Id.* at 167 (¶24). The "totality of the relevant facts" did not support Ryals's argument that the prosecution's exercise of ten of its twelve peremptory strikes on female jurors inferred discriminatory intent. *Id*. at 166 (¶15). The court noted that voir dire questioning had revealed valid reasons for the prosecution's strikes and that nothing else supported an inference of discriminatory intent. *Id.* at (¶16). Our scrutiny of the record before us reveals that voir dire responses from the stricken jurors provide valid, gender-neutral reasons for the prosecution's rejection. As in *Ryals*, there was no other "indication that the State's use of peremptory challenges against female venire persons created an inference of purposeful discrimination." *Id*. at 167 (¶24).

¶14.    "Trust is placed in a trial judge to determine whether a discriminatory motive drives the reasons given for striking a potential juror." *Walker*, 815 So. 2d at 1215 (¶12). Considered in concert, the relevant facts do not reveal an abuse of the trial court's discretion.

## CONCLUSION

¶15.    In the case before us, Dixon's assertion that the State exercised its peremptory strikes

9

in a discriminatory manner does not pass muster. Dixon failed to establish a prima facie showing of purposeful gender discrimination. Therefore, the judgment of the Forrest County Circuit Court is affirmed.

¶16. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE AND LAWRENCE, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**