# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00664-COA

ANTHONY TERRELL BOOKER A/K/A ANTHONY BOOKER A/K/A ROBERT BOOKER

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

DATE OF JUDGMENT: 03/28/2018
TRIAL JUDGE: HON. DALE HARKEY
COURT FROM WHICH APPEALED: JACKSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER
BY: STACY L. FERRARO
KATHERINE ELIZABETH POOR
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: JEFFREY A. KLINGFUSS
NATURE OF THE CASE: CIVIL - POST-CONVICTION RELIEF
DISPOSITION: REVERSED AND REMANDED - 09/03/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. In 2004 when he was a sixteen, Anthony Terrell Booker was convicted of capital murder and sentenced to life in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole. His sentence was later vacated pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012), which abolished "mandatory life without parole" punishments for juveniles. *Id.* at 465. The Circuit Court of Jackson County conducted a sentencing hearing after Booker allegedly waived resentencing by a jury. The court again sentenced Booker to life without eligibility for parole. He appeals that sentence. Finding

that Booker was entitled to resentencing by a jury and that his waiver did not comport with the requirements of Mississippi Code Annotated section 99-19-101 (Rev. 2015), we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2003, at the age of sixteen, Booker and three others[1] were indicted for the capital murder of Dorian Johnson, age 52. Prior to trial in May 2004, Booker had been tested by psychologist Dr. John Stoudenmire and found to have an IQ of 65, which indicated mild mental retardation. In light of *Atkins v. Virginia*, 536 U.S. 304 (2002), which held that executions of mentally retarded people constituted cruel and unusual punishment, the State withdrew its request for the death penalty prior to trial.

¶3.     Booker's case was severed from those of his co-defendants and separately tried on May 20, 2004. After a three-day trial, a Jackson County jury found Booker guilty. In Booker's appeal of that conviction, this Court described the facts as follows:

> On December 30, 2002, Booker, Shawn Davis, Mary Scarbrough, and Desmond Shields were involved in the beating death of Dorian Johnson. At the urging of Scarbrough, Booker, Davis, and Scarbrough met Johnson at a park where they began beating and kicking him. After the beating, the trio placed Johnson in the back of his Jeep and transported him to Vancleave. There the trio, now joined by Shields, continued the beating and took Johnson's Jeep and wallet. After being reported missing by his family, Johnson was found in Vancleave on January 6, 2003. Johnson's principal cause of death was determined to be severe blunt injuries to the head, although contributing causes included several severe cuts to his face and neck, broken ribs, and fluid buildup in his lungs. Booker, Davis, Scarbrough, and Shields were arrested on January 6, 2003, and charged with Johnson's death. After filing a motion for severance on March 4, 2004, Booker was tried for his crime on May 17, 2004, and convicted and sentenced on May 20, 2004.

_____

[1] Mary Scarborough, age 17; Shawn Davis, age 16; and Desmond Shields, age 18.

2

*Booker v. State*, 5 So. 3d 411, 416 (Miss. Ct. App. 2008), *aff'd*, 5 So. 3d 356 (Miss. 2008).

¶4.     The guidelines for sentencing a defendant convicted of capital murder are found in Mississippi Code Annotated section 99-19-101 (Rev. 2015).  The law allows three options: death, life imprisonment without eligibility for parole or life imprisonment with eligibility for parole.   But because Mississippi's parole statutes, specifically Mississippi Code Annotated section 47-7-3(1)(e) (Rev. 2015), prohibit parole for any person convicted of capital murder under section 99-19-101, the only sentence the court could and did give Booker was life imprisonment without eligibility for parole.[2]   We affirmed Booker's conviction. *Booker v. State*, 5 So. 3d 411 (¶2) (Miss. Ct. App. 2008) The Mississippi Supreme Court granted his petition for writ of certiorari but affirmed his conviction as well, *Booker v. State*, 5 So. 3d 356 (¶10) (Miss. 2008).  The United States Supreme Court denied his petition for a writ of certiorari.  *Booker v. Mississippi*, 558 U.S. 1150 (2010).

¶5.     In 2012, the United States Supreme Court decided *Miller v. Alabama* and held that mandatory life imprisonment without eligibility for parole for people under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Miller,* 567 U.S. at 479.  The Mississippi Supreme Court applied *Miller* in *Parker v. State*, 119 So. 3d 987 (2013), and vacated a sentence of life without eligibility for parole given to a juvenile.  *Parker*, 119 So. 3d at 998 (¶26).  It remanded the case for determination of whether Parker should be sentenced to life imprisonment without eligibility

---

[2] Mississippi Code Annotated section 47-7-3(1)(e) (Rev. 2015) reads: "No person shall be eligible for parole who is charged, tried, convicted and sentenced to life imprisonment under the provisions of Section 99-19-101."

for parole or life with eligibility for parole notwithstanding the provisions of Mississippi Code Section 47-7-3(1)(e) (Rev. 2015).

¶6. After *Parker*, Booker filed an application with the Mississippi Supreme Court for leave to file a motion to vacate his sentence, which the court granted insofar as he was granted leave to file a motion for post-conviction relief in the circuit court of Jackson County. Booker filed his application for post-conviction relief with the circuit court and on October 16, 2015, the court entered an agreed order setting aside Booker's sentence of life without eligibility for parole pursuant to *Miller*.

¶7. On April 27, 2016, Booker filed a motion to impose a sentence of life with eligibility for parole in the Circuit Court of Jackson County. Prior to the hearing on his motion, Booker sought funds from the court to employ Dr. Tarlanda McDaniel-Gooden, owner of HBMc Capital Defense Mitigation Services in Pensacola, Florida, to conduct a mitigation investigation. The court granted Booker's request in part.[3]

¶8. Booker also filed a motion to impanel a jury for the resentencing hearing. But the motion was not considered prior to the sentencing hearing. At the commencement of the hearing, Booker's counsel announced that he was waiving consideration of the matter by a jury. The court did not question Booker to determine whether the waiver was knowingly and voluntarily made. Moreover, the waiver was not reduced to writing or signed by Booker and the State.

¶9. At the June 20, 2017 hearing, the State offered no testimony but entered a number of

---

[3] The court authorized her employment but not the total amount Booker requested that she be paid.

4

exhibits for the court's review, including the transcript of Booker's entire trial testimony and selected excerpts, Booker's videotaped confession, photos of the victim, Johnson's autopsy, a transcript of Desmond Shields's interrogation statement that was played at Booker's trial, and the jury verdict. The State also entered the MDOC Rules Violations Report on Booker which showed a number of violations over the years of his incarceration.

¶10. Booker presented live testimony from Dr. Stoudenmire and entered the psychological evaluation of Booker that he performed in April 2004. Booker also called the mitigation investigator who testified about her interviews with family members, and he entered her report that detailed those interviews. Booker's mother, Brenda Booker, his grandmother, Jeroline Covington, and his sister, Victoria Plummer, testified. Booker also entered Mary Scarborough's testimony that apparently came from her trial to provide a different picture of the victim and the events. He also entered the testimony of Shawn Davis, who testified at Scarborough's trial, to show it was Davis, not Booker, who decided on the spur of the moment to kill Johnson.

¶11. After the hearing, the court issued its order denying the motion to impose a sentence of life with eligibility for parole. The court commented on the material presented at the hearing but also found that there was no information presented that Booker participated in any of the programs offered by MDOC that the court had independently found on the internet. The court found that Booker did not qualify to be re-sentenced.

¶12. Upon receipt of the order, Booker filed a motion for a new trial or related relief on April 13, 2018. Among other things, Booker pointed out that the court had relied on its own

extra-record internet search of MDOC programs and drew inferences therefrom about Booker's lack of participation, which Booker had no opportunity to rebut. The court denied the motion without argument or written opinion on April 16, 2018.

¶13. From these orders, Booker now appeals.

## STANDARD OF REVIEW

¶14. Where an appeal raises a question of law, the applicable standard of review is de novo. *Moore v. State*, No. 2017-KA-00379-SCT, 2019 WL 2295774, at *3 (¶17) (Miss. 2019). In a *Miller* resentencing case, there are two applicable standards of review. First, whether the trial court applied the correct legal standard is a question of law subject to de novo review. *Chandler v. State*, 242 So. 3d 65, 68 (¶7) (Miss. 2018), *reh'g denied* (May 17, 2018), *cert. denied*, 139 S. Ct. 790 (2019). If the court applied the proper legal standard, its sentencing decision is reviewed for an abuse of discretion. *Id.*

## DISCUSSION

¶15. Booker raises nine issues on appeal; however, his first two—his right to resentencing by a jury and the validity of his waiver of that right—are dispositive of his appeal. This is not to say that his other issues are unimportant or irrelevant, but we need not decide them because we hold that Booker did have a right to resentencing by a jury and that his waiver did not comport with the requirements of Mississippi Code Annotated section 99-19-101.

### I. Whether Booker was entitled to resentencing by a jury.

¶16. The issue of Booker's waiver depends on whether he had the right to a jury on resentencing. In finding that he did, we first review the relevant precedents concerning

6

resentencing of juveniles and who the sentencing authority can be.

¶17.    In *Miller*, 567 U.S. at 470, the United States Supreme Court abolished "mandatory life-without-parole sentences for juveniles" charged with homicide.  A sentencing authority may still impose such a sentence, but it must be individualized and take into account the fact that the defendant is a juvenile.  *Id.* at 464.  Quoting *Johnson v. Texas*, 509 U.S. 350, 367 (1993), the court said a sentencer must have the ability to consider the "mitigating qualities of youth."  *Id.*  In *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), the Supreme Court held that *Miller* was a substantive change in the law that was retroactive.  *Id.* at 729.

¶18.    Prior to *Miller*, Mississippi's criminal and parole statutes had resulted in mandatory life-without-parole sentencing of juveniles in several instances.  As noted earlier, under Mississippi Code Annotated sections 97-3-21 (Rev. 2014) and 99-19-101, those convicted of capital murder faced the penalties of death, imprisonment for life without eligibility for parole, or life with eligibility for parole.  But the parole statutes, specifically section 47-7-3, provided that those convicted of capital murder were not eligible for parole.  This left the sentencing authority only two options when punishing capital-murder defendants, no matter their age—death or life without eligibility for parole.  If the State withdrew its request for the death penalty, then defendants, including juveniles, automatically received life without eligibility for parole (i.e., a mandatory "life-without-parole" sentence).

¶19.    In 2013, the Mississippi Supreme Court followed *Miller*'s ruling in *Parker v. State*, 119 So. 3d 987 (Miss. 2013), and remanded the mandatory life-without-parole sentence of a 15-year-old convicted of murdering his grandfather.  *Id.* at 998 (¶26).  The court noted that

prior to *Miller*, trial courts were not required to hold an individualized sentencing hearing for juveniles before imposing a life sentence. *Id*. at 996 (¶20). It noted that the *Miller* Court identified several factors that must be considered by the sentencing authority: (1) consideration of the juvenile's chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the dynamic of the juvenile's family and home environment and its effect on him; (3) the circumstances of the homicide offense, including the extent of the juvenile's participation in the conduct and the way familial and peer pressures may have affected him; (4) whether he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys; and (5) the possibility of rehabilitation. *Parker*, 119 So. 3d at 995-96 (¶19).

¶20. Since *Parker*, individuals who had committed capital murders and were sentenced as juveniles to life without eligibility for parole before *Miller* have petitioned the court for resentencing hearings.

¶21. We have decided several post-*Miller* resentencing cases, and in three the issue of who that sentencing authority should be was presented. In *Cook v. State*, 242 So. 3d 865, 877 (¶43) (Miss. Ct. App. 2017), we held that a juvenile who pleaded guilty to capital murder did not have a constitutional right to sentencing by a jury because, among other things, when he pleaded guilty he waived his right not only to be tried but his right to be sentenced by a jury.

¶22. In *Wharton v. State*, No. 2017-CA-00441-COA, 2018 WL 4708220, at *1 (¶1) (Miss.

8

Ct. App. 2018), Wharton, age 17, did not plead guilty. He was tried pre-*Miller* for robbing a convenience store and killing a clerk. A jury convicted him of capital murder under Mississippi Code Annotated section 99-19-101 and the same jury determined that he should be sentenced him to life without parole. As noted earlier, at that time, there were no "sentencing hearings" where mitigating factors related to Wharton's youth could be presented and sentencing options were limited. *Wharton*, 2018 WL 4708220, at *1 (¶1). After *Miller*, Wharton petitioned for resentencing, which was granted. Wharton then moved the trial court for sentencing by a jury, which the court denied. On appeal, we reversed that ruling and held that under section 99-19-101 resentencing should be undertaken by a jury, not the trial judge. *Wharton*, 2018 WL 4708220 at, *4 (¶15). We found that the legislature had vested sentencing authority in the jury by the express language of the statute:

> (1) Upon conviction or adjudication of guilt of a defendant of capital murder or other capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life imprisonment. *The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable*.

Miss. Code Ann. § 99-19-101 (Rev. 2015) (emphasis added). The *Wharton* Court further pointed out that resentencing should only be conducted by a trial judge if the right to a jury has been waived or the defendant had previously pleaded guilty. *Wharton*, 2018 WL 4708220, at *4 (¶15)

¶23. We reiterated the *Wharton* requirement for a jury in a *Miller* resentencing hearing if requested in *McGilberry v. State*, No. 2017-KA-00716-COA, 2019 WL 192345, at *4 (¶14) (Miss. Ct. App. 2019). The procedural posture of that case was slightly different than that

9

in *Wharton*. In 1994, sixteen-year-old McGilberry was tried, convicted and sentenced to death by a jury for the deaths of three family members. *McGilberry*, 2019 WL 192345, at at *1 (¶1). Following the holding in *Roper v. Simmons*, 543 U.S. 551 (2005), which abolished the death penalty for juveniles, McGilberry's sentence was reduced to life in prison without parole. *McGilberry*, 2019 WL 192345, at *4 (¶2). After *Miller*, the Mississippi Supreme Court granted McGilberry leave to file a motion for post-conviction relief for resentencing. *McGilberry*, 2019 WL 192345, at *1 (¶3). At the trial level, McGilberry requested resentencing by a jury which the court denied. *McGilberry*, 2019 WL 192345, at *1 (¶4). The court proceeded with the hearing and resentenced McGilberry to life without parole. *McGilberry*, 2019 WL 192345, at *2 (¶7). On appeal, we reversed based on *Wharton* and remanded for resentencing by a jury. *McGilberry*, 2019 WL 192345, at *4 (¶14). We distinguished *McGilberry* from *Cook v. State*, 242 So. 3d 865 (Miss. Ct. App. 2017), because, unlike the defendant in *Cook*, McGilberry had not pleaded guilty or waived sentencing by a jury. *McGilberry*, 2019 WL 192345, at *3 (¶11). We also distinguished *McGilberry* from *Pham v. State*, 716 So. 2d 1100 (Miss. 1998), because *Pham* did not involve the sentencing of a juvenile. *McGilberry*, 2019 WL 192345, at *3 (¶12). When the State did not seek the death penalty for the adult defendant in *Pham* who was convicted of capital murder, the only option left to the court was life without parole. Unlike Pham, McGilberry was a juvenile and entitled under *Miller* to a sentencing hearing to determine if he was eligible for life with parole. *McGilberry*, 2019 WL 192345 at *3 (¶12). Following *Wharton* we held that the sentencing decision should be made by a jury unless waived in

10

writing.

¶24. The Mississippi Supreme Court has recently held in *Moore v. State*, No. 2017-KA-00379-SCT, 2019 WL 2295774, at *10 (¶57) (Miss. 2019), that the appropriate sentencing authority for a juvenile defendant convicted of capital murder is a jury. In that case, Gerome Moore, a juvenile, was convicted for capital murder. *Moore*, 2019 WL 2295774, at *2 (¶14). Before sentencing, he filed a motion for jury, rather than court, consideration of the *Miller* factors and sentencing. *Moore*, 2019 WL 2295774, at *3 (¶15). The court denied Moore's request and conducted the hearing itself. *Moore*, 2019 WL 2295774, at *3 (¶15). On appeal, the supreme court reversed and held that Moore was entitled to have a jury determine his sentence. *Moore*, 2019 WL 2295774, at *11 (¶62). The Court examined the language of Mississippi Code Annotated section 99-1-101 and found it to be unambiguous and mandatory. *Moore*, 2019 WL 2295774, at *9 (¶¶50-51). The Court also decided the question of which punishment statute applied, section 97-3-21 or section 99-19-101, saying:

> The State argues that Section 99-19-101 is only applicable to a jury's imposition of a death sentence because Moore was sentenced under Section 97-3-21. Section 97-3-21, though, is not a separate sentencing scheme from Section 99-19-101. Section 97-3-21 details the punishment for capital murder, but every capital-murder sentence is subject to Section 99-19-101, given its unambiguous language.

*Moore*, 2019 WL 2295774, at *9 (¶52). In the case at hand, the State made the same argument that the *Moore* court rejected.

¶25. The Court acknowledged the Court of Appeals' holdings in *Cook*, *Wharton*, and *McGilberry*, which it said dealt with defendants who had been sentenced to life-without-parole and were seeking resentencing by a jury post-*Miller*. *Moore*, 2019 WL 2295774, at

11

*10 (¶57). *Moore* did not disturb those rulings but in essence extended them to include instances of juvenile defendants newly-tried and newly-convicted who were facing sentencing for the first time. *Moore*, 2019 WL 2295774, at *10 (¶57). Henceforth, according to *Moore*, all juveniles convicted of capital murder are entitled to a hearing before a jury where the *Miller* factors are considered and life with eligibility for parole is an option.

¶26. We find *Wharton* and *McGilberry* to be controlling, and under Mississippi Code Annotated section 99-19-101, Booker was entitled to the determination of his sentence by a jury. *Moore* also applies because this was technically Booker's "first sentencing hearing."

## II. Whether Booker's "waiver" of a jury was statutorily valid.

¶27. We now turn to Booker's waiver. In general, waivers of the right to a jury trial must be knowingly, intelligently, and voluntarily made. *Wilson v. State*, 81 So. 3d 1067, 1087 (¶30) (Miss. 2012). "The determination of whether there has been an intelligent waiver of [a] right . . . must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). In *Wilson*, the defendant signed such a waiver of jury for trial and sentencing because his lawyers told him the judge could not legally sentence him to death if he waived a jury. They failed to tell him that, in fact, the judge had twice imposed the death penalty on others who had waived jury sentencing. *Wilson*, 81 So. 3d at 1089-90 (¶¶32, 36). The Supreme Court felt this was sufficient reason to reverse and require a hearing on the issue. *Id*. at 1091 (¶36).

¶28. Section 99-19-101 adds additional requirements to the validity of a waiver of jury

when a defendant is sentenced in capital murder cases. It specifically requires that the waiver of sentencing by a jury be in writing and signed by both the State and the defendant:

> If the trial jury has been waived, or if the defendant pleaded guilty, the sentencing proceeding shall be conducted before a jury impaneled for that purpose or may be conducted before the trial judge sitting without a jury if both the State of Mississippi and the defendant agree thereto in writing.

¶29. In this case, there is no signed waiver in the record—nothing signed by the State or by Booker. At oral argument, the State conceded that there was no written waiver as required by the statute. Moreover, there was no examination by the court to determine if Booker was knowingly, intelligently, and voluntarily waiving his right to have a jury determine his sentence. Accordingly, we reverse the sentence the court imposed and remand the case for determination of the validity of Booker's waiver of his right to have a jury determine his sentence. On remand, the sentencing authority is advised to consider all five of the *Parker* factors in determining whether Booker is entitled to life with eligibility for parole.

## CONCLUSION

¶30. Because Booker was entitled to a jury determination of his sentence pursuant to Mississippi Code Annotated section 99-19-101 and because Booker's waiver of that right was not in writing nor determined to have been knowingly, intelligently, and voluntarily made, we reverse the court's sentence and remand for further proceedings.

¶31. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McCARTY AND C. WILSON, JJ., CONCUR. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., NOT PARTICIPATING.**

13